THE TOWN OF LYONS, Appellant, *v.* DWIGHT S. CHAMBER-LAIN, Respondent.

Proceedings taken to bond the plaintiff in aid of a railroad resulted in a decision that bonds of the town should be issued to an amount specified, and commissioners on behalf of the town were appointed to subscribe for the stock and to issue the bonds. Said commissioners, the railroad corporation and one P. entered into an agreement, by the terms of which the former were to issue the bonds and place them in the hands of P., as trustee, to be exchanged for an equal amount of stock as the work of construction progressed. This action was brought against the parties to that agreement, to have said proceedings declared null and void, to enjoin the negotiation or disposition of the bonds and to require their cancellation. The referee found the bonded proceedings to be void for want of jurisdiction, but that P. had sold a portion of the bonds. Defendants were required to account for the proceeds, they to be allowed for all sums paid out of the same in good faith in constructing the road or for any legal purpose mentioned in the agreement. An accounting was had under these findings, and a judgment was rendered against P. for the balance of the proceeds in his hands. Plaintiff objected to

the allowance for moneys expended.  *Held* untenable ;  that to en-
title it to recover any of the proceeds of the bonds plaintiff must
recognize the validity of the bonds, as, if it claimed them invalid,
none of the proceeds thereof belonged to it and it could only recover
upon the theory that the bonds had been made and negotiated wrong-
fully and without authority, and had gone into the hands of *bona fide*
holders, who could enforce the same ; that, therefore, as plaintiff was in
court claiming the proceeds of the bonds it could take no benefit from
the finding as to their invalidity, and P., as trustee, was entitled to credit
for all sums paid out by him within the scope of his duty and authority.
Also *held* that P. was properly allowed his commissions.

The agreement, as made, limited the application of the bonds or their pro-
ceeds to the construction of the road in the county of W.; subsequently
the commissioners gave to P. a written authority to pay out the bonds
for the construction of the road in an adjoining county. *Held*, that
P. was entitled to be allowed for payments so made.

*It seems* that had the action been maintained upon the finding as to the in-
validity of the bonds, no injury was sustained, and no recovery could have
been had beyond the costs and expenses incurred by the town in defend-
ing itself against an attempted enforcement of the bonds, as, if the pro-
ceedings were without jurisdiction and the bonds issued absolutely with-
out authority, not by the town but by strangers falsely simulating au-
thority, plaintiff was not estopped by the recitals in the bonds, and they
could not be enforced against it, even under the decisions of the U. S.
courts, by a *bona fide* holder.

*Lyons* v. *Munson* (99 U. S. 684), distinguished.

(Argued January 20, 1882; decided October 10, 1882.)

APPEAL from judgment of the General Term of the Su-
preme Court in the fourth judicial department, entered upon
an order made the second Tuesday of June, 1881, which modi-
fied a judgment entered upon a decision of the Special Term,
and affirmed such parts of the interlocutory judgment herein
as were appealed from.    (Reported below, 25 Hun, 49.)

This action was brought to have it adjudged that certain
proceedings to bond the plaintiff in aid of defendant, the So-
dus Bay and Corning Railroad Company, were void and the
bonds issued under it invalid, to restrain the negotiation or
disposition of said bonds, and for judgment that the same be
delivered up to be canceled.

These bonds purport to have been issued by virtue of an
order made by the county judge of Wayne county in proceed-

ings under the Railroad Act. (Chap. 907, Laws of 1869.) The defendants Cole, Perrine and Chamberlin were appointed commissioners by such order; they issued the bonds which were delivered to the defendant Parshall, on the 17th day of May, 1872, in pursuance of an agreement of that date, made between such commissioners, the railroad company, and said Parshall. By that agreement they were to be held by Parshall *in trust* — that they, or the proceeds thereof, "shall be first used to buy the right of way and the necessary grounds for the use of the road through the county of Wayne, for preparing or grading the road-bed and preparing the same for the ties, including masonry and bridging, and in purchasing and laying down the ties ready for the iron through the county of Wayne." Parshall was to pay over to the railroad company the bonds, or their proceeds, as fast as the work progressed. By a subsequent instrument made by said commissioners on the 20th of February, 1873, it was noted that it was for the interest of the plaintiff that such railroad be constructed from its intersection with the Lake Ontario Shore railroad to near Geneva, Ontario county, and Parshall was authorized to use the proceeds of said bonds between these points. By the report of the referee it was adjudged that the bonding proceedings were invalid, for want of jurisdiction; that one hundred and nine of the bonds which were in the hands of Parshall should be surrendered up and be canceled, and that the defendants should account for the proceeds of forty-one bonds which had been sold, and for the proceeds of any coupons from the one hundred and nine bonds which had been sold. The eighth paragraph of the report of the referee is as follows: "8th. That the defendants account to the plaintiff for the remaining forty-one bonds of said town, and for any of the coupons or proceeds thereof, or of any of the coupons of the said one hundred and nine bonds sold by them or either of them; the said defendants to be allowed for all of the same and the proceeds thereof which they have in good faith laid out and expended in building and equipping said road through the county of Wayne, and for any legal purpose mentioned in

the agreements between the defendant Parshall and the said commissioners in evidence before me, for which purpose a further reference should be ordered." It was also found that said defendants had acted in good faith in all their dealings with the bonds and the avails thereof. Upon this report an interlocutory judgment was entered, the eighth paragraph of which is substantially in the language of the report, and it was referred back to the same referee to take and state the defendant's account. In accordance with the provisions of such interlocutory judgment, an accounting was had, and upon the coming in of the report judgment was rendered against Parshall for the balance found to be in his hands. Further facts appear in the opinion.

*Chas. H. Roys* for appellant. The whole proceeding and undertaking before the county judge to bond the plaintiff was void, and an absolute nullity. (*Horton* v. *Town of Thompson*, 71 N. Y. 513 ; *Cagwin* v. *Town of Hancock*, 84 id. 532 ; *People* v. *Spencer*, 55 id. 135 ; *People* v. *Hughett*, 5 Lans. 89 ; *People* v. *Smith*, 45 N. Y. 772 ; *People* v. *Adirondack Co.*, 57 Barb. 656 ; *Fort Edward, etc., Plankroad Co.* v. *Payne*, 15 N. Y. 583 ; *B. & O. Turnpike Co.* v. *North*, 1 Hill, 58 ; *Troy, etc., R. R. Co.* v. *Tibbetts*, 18 Barb. 297 ; *People* v. *Batcheller*, 53 N. Y. 128 ; *Weismar* v. *Village of Douglas*, 64 id. 91 ; *People* v. *Hurlburt*, 46 id. 110 ; *Angel* v. *Town of Hume*, 17 Hun, 374 ; *Wilson* v. *Town of Caneadea*, 22 id. 217.) All courts condemn such proceedings when they involve the taxing power. (*Loan Association* v. *Topeka*, 20 Wall. 655 ; *Allen* v. *Inhab. of Joy*, 60 Me. 124 ; *Lowell* v. *City of Boston*, 111 Mass. 454 ; *Commercial Bk.* v. *Iola*, 2 Dill. 358 ; *Bissell* v. *Kankakee*, 64 Ill. 249 ; *Curtis* v. *Whipple*, 24 Wis. 350 ; *McGuire* v. *Smock*, 42 Ind. 1 ; *Howard* v. *First Independent Church, etc.*, 18 Md. 451 ; *Ex parte Selma, etc., R. R. Co.*, 46 Ala. 230 ; *Garrigues* v. *Commrs.*, 39 Ind. 66 ; *Suprs. of Fulton Co.* v. *Mississippi, etc., R. R. Co.*, 21 Ill. 338.) A town has no general authority to issue bonds, but only such special authority as is conferred by some statute, and can only

bond in the way pointed out by the statute. (*Cagwin* v. *Town of Hancock*, 84 N. Y. 532; *Starin* v. *Town of Genoa*, 23 id. 439; *Gould* v. *Town of Sterling*, id. 456.) Assuming that all the proceedings down to and including the appointment of commissioners were regular and valid, then the agreements are invalid from want of authority to make them. (Laws of 1870, chap. 507; *Jackson Co.* v. *Bush*, 77 Ill. 59; *Falconer* v. *B. & J. R. Co.*, 69 N. Y. 491; *People* v. *Van Valkenburg*, 63 Barb. 107; *Town of Wayne* v. *Sherwood*, 14 Hun, 423.) The fact that defendant Parshall acted in "good faith," and upon the belief that the two agreements were valid did not render the town liable for his expenditures as treasurer of the railroad company to the extent of the "allowances." (*Town of East Oakland* v. *Skinner*, 4 Otto, 94; *Henry* v. *Root*, 33 N. Y. 237; *Town of Springport* v. *Teutonia Svgs. Bk.*, 84 id. 403.) Parshall could not by a sale of the bonds acquire a different or better title to their proceeds. (*Comstock* v. *Hier*, 73 N. Y. 275; *Gilmour* v. *Thompson*, 49 How. 198; *Haynes* v. *Rudd*, 17 Hun, 477.) The order of the Special Term vacating the judgment, because the clerk computed and added interest from the date of the report of the referee on the sum awarded to the entry of judgment was erroneous. (Code, § 1235; Laws of 1869, chap. 807; *Hun* v. *Norton*, Hopk. Ch. 392.) Interest should have been computed from the date of the report. (*Jacot* v. *Emmot*, 11 Paige, 142.)

*William F. Cogswell* for respondent. The agreements entered into between the commissioners, the railroad and Parshall are void. (Laws of 1870, chap. 507; Laws of 1871, chap. 925, § 5.)

EARL, J. It is strenuously contended on the part of the plaintiff that the defendants are entitled to no credit whatever on account of the moneys received by Parshall from the bonds of the town and paid out by him on account of the railroad company, and whether or not this contention is well founded is the most important question in this case.

There are only two theories upon which Parshall could be made absolutely liable for all the bonds negotiated or transferred by him. *First.* That he wrongfully, in bad faith, negotiated the bonds which had been made without authority and thus placed them in the hands of *bona fide* holders with the intention of making the town liable thereon, and thus making it liable and in that way causing it damage. An action to enforce such a liability would be one for a pure wrong to recover damages caused thereby.

This action was not commenced or tried upon this theory, and there is a finding that Parshall " in all his dealings with the plaintiff, and in his use of the bonds and coupons acted in good faith," and this finding cannot be said to be absolutely unauthorized by the evidence. The liability of Parshall cannot, therefore, be based upon this theory, which involves bad faith and an intentional wrong.

*Second.* The other theory is that the bonds were issued without any authority of the town, and that Parshall had no authority to act as agent of the town or receive or pay out the proceeds of the bonds on its account. To sustain this theory it was incumbent upon the town to assert and maintain that the proceeds of the bonds belonged to it. How did the proceeds of the bonds come to belong to it ? If it repudiates the whole transaction in making and issuing the bonds, then the proceeds of the bonds did not belong to it, and the liability of Parshall could only be based upon the first theory. It can only claim the proceeds of the bonds by recognizing their validity, and thus ratifying the agencies through which they were made, negotiated and the proceeds obtained. It cannot repudiate the bonds and claim the proceeds of them. It matters not that it is forced by the decisions of the Federal courts to pay them. It could pay under compulsion and yet repudiate the bonds, and all the agencies through which they were issued, and then sue for the damages it suffered upon the theory first mentioned. But an action to recover money received for the bonds proceeds necessarily upon the assumption of the validity of the bonds.

It matters not that the court has found that all the proceedings to bond the town were absolutely null and void. The plaintiff has no benefit from this finding, so long as it is in court claiming the proceeds of the bonds, and thus attempting to maintain this action upon the second theory above mentioned.

We must, therefore, assume that the town commissioners were properly appointed, that they were authorized to employ Parshall as agent, that the agreements they made with him were valid, and hence the main contention upon the argument before us must fail.

It is further claimed that certain errors were committed by the court below upon the accounting, and that Parshall was allowed certain credits to which he was not legally entitled.

We have carefully examined the accounts, and so far as we can perceive, the accounting as finally confirmed was conducted upon proper principles, and no error was committed to the prejudice of the plaintiff.

The judgment should be affirmed.

FINCH, J. The plaintiff must rely upon one of two theories, either of which necessarily excludes the other : The case has been decided upon the ground that Parshall, relatively to the town of Lyons, stood in the position of its trustee, charged with the performance of certain duties, and that the trust having been ended by the insolvency of the railroad company, and its failure to fulfill the conditions which gave it a right to the unexpended bonds, the trustee was bound to account as such, and in the process, was entitled to credit for all sums lawfully paid out by him within the scope of his duty and authority. But the plaintiff comes to us on this appeal with an entirely different theory, the aim of which is to deprive Parshall of any credit whatever, while compelling him to account for the whole of the bonds sold. This result is claimed to follow from the adjudication already made in the action, that the bonds were wholly void for want of jurisdiction in the county judge of Wayne county to order their issue, or appoint commissioners for that purpose. That is one of the

legal conclusions of the referee, which passed as an adjudication into the judgment, and is not easily reconcilable with the further decision that the contracts between Parshall and the pretended railroad commissioners were valid. The argument is that the county judge, having no jurisdiction, could render no judgment; and that his order that bonds be issued, and his appointment of commissioners was an absolute nullity; that the latter, therefore, were destitute of any authority to represent the town, and were in no sense or respect its agents; that the bonds consequently were the unauthorized act of strangers and wrong-doers, and absolutely null and void as against the town; and the contracts with the pretended commissioners were necessarily utterly invalid. But this theory seems to us destructive of the plaintiff's whole case, and while it cuts off Parshall's right to credits, at the same time defeats plaintiff's action. Because, if the bonds were bad, and the judgment upon which they rested utterly invalid for want of jurisdiction, so that they were never made by the town at all, either directly or indirectly, it follows that the only right of action against the wrong-doers possible to the town would be an action of tort for the injury done. But there could be no injury beyond the costs and expenses of the town's defense against an attempted enforcement of the bonds, for these, having been issued absolutely without authority — not by the town, but by strangers falsely simulating an authority — could not be enforced against the town unless the latter assented, or forebore its defense. That is the doctrine of this court beyond any question. In *Cagwin* v. *Town of Hancock* (84 N. Y. 542), we said distinctly that there can be no *bona fide* holders of bonds, within the meaning of the law applicable to negotiable paper, which have been issued without authority. No possible injury could, therefore, result to the town, except, as we have said, the costs of a successful defense. It did not appear upon the trial that the town of Lyons had paid a single dollar upon a single bond. When the trial of the main question ended at the interlocutory judgment, no evidence had been given that the town had been compelled to pay, or had actu-

ally paid any thing on account of these bonds. At that stage of the litigation there had not even been shown the existence of any suit or proceeding against the town growing out of these bonds, so far as we have been able to ascertain from the abundant mass of matter in the printed case, except the judgment in favor of Munson in the United States Circuit Court for about $14,000, which the referee certifies to us was taken by writ of error to the Supreme Court, and a bond given to work a *supersedeas* of that judgment, and that the action remained undetermined in the appellate court. There was no proof that this judgment had been paid, and it is quite certain that it had not. So that, in rendering the interlocutory judgment, the plaintiff would necessarily have been defeated had it stood upon the ground now taken, for, on the theory that the whole proceedings were utterly null, the case became simply that of a suit against wrong-doers, guilty of a tort in simulating bonds of the town; but with no proof of any damage sustained by or resulting to the town as a consequence of the wrong. There was no loss or injury to be compensated. It had not yet occurred. .

The answer attempted is that some of the bonds were proved to have been sold, and presumably were in the hands of *bona fide* holders, and these might enforce them in the Federal courts. Passing by the obvious impropriety of assuming in advance that these courts would decide in the future what, as we view it, is not the law, we are quite sure that they have asserted no such doctrine in the past. We have disagreed, and may continue to disagree, with some of their conclusions as to the rights of *bona fide* holders of municipal bonds, but they have held nothing that we cannot respect, while we do not agree. They have ruled, substantially, that where a municipal corporation has been empowered by law to issue bonds, and through its agents or officers has made such bonds, any error or irregularity in the issue is unavailable against the innocent holder for value; that, as against such holder, the determination of the tribunal or officer charged with the duty of ascertaining whether or not conditions precedent have been performed

is conclusive upon the corporate obligor, and cannot be attacked collaterally; and that by a recital in the bonds of such due performance, or by accepting or retaining the stock given in exchange, the corporation is estopped from denying the validity of its apparent obligations. But all this was said of cases in which the town, by those who could be deemed its agents, had made what purported to be its obligations. (*Commissioners of Knox Co.* v. *Aspinwall*, 21 How. [U. S.] 539; *Moran* v. *Commissioners of Miami Co.*, 2 Black, 722; *Bissell* v. *Jeffersonville*, 24 How. [U. S.] 287; *Gelpcke* v. *City of Dubuque*, 1 Wall. 175; *Mercer Co.* v. *Hacket*, id. 83; *Rogers* v. *Burlington*, 3 id. 654; *Cincinnati* v. *Morgan*, id. 275; *Meyer* v. *Muscatine*, 1 id. 385; *Supervisors* v. *Schenck*, 5 id. 772; *Pendleton Co.* v. *Amy*, 13 id. 297; *Orleans* v. *Platt*, 99 U. S. 676.) It has never yet been said that where the corporation had done nothing; where strangers and wrong-doers, having no shadow of authority, had boldly simulated its bonds; that a recital in the latter of a falsehood would estop the town, or the false bonds be enforceable against it. (1 Dillon on Mun. Corp. 511, note; *Township of East Oakland* v. *Skinner*, 4 Otto, 255; *Steines* v. *Franklin Co.*, 48 Mo. 167; 8 Am. Rep. 87.) On the contrary, the Federal court has held to the doctrine that where the authority to act is solely conferred by statute, which in effect is the letter of attorney of the officer, all persons must, at their peril, see that the act of the agent on which they rely is within the power under which the agent acts. (1 Dill., *supra*, § 419; *The Floyd Acceptances*, 7 Wall. 666; *Marsh* v. *Fulton Co.*, 10 id. 676.) And that court has not held, nor is it likely to hold, that anybody is estopped by the acts of strangers and trespassers, never assented to, nor silently observed when there was a duty to speak. Here, then, on the appellant's theory, was a case where the county judge had no jurisdiction; where, under the statute, he had no power to decide; where his record was equally open to everybody's observation, and, as was said by DWIGHT, J., at Special Term, on the application for a *mandamus*, its nullity was apparent on the face of the papers; where his order to issue

bonds, and his appointment of commissioners were totally void ; where their acts did not, and could not, bind, or even represent, the town ; and where the bonds they made were wholly their own, and merely simulated obligations of the town.  We decline to believe that on such a state of facts the Federal court would hold the town of Lyons liable on the bonds, or estopped by the falsehood of the wrong-doer.  But it is said on the argument that it has done so, and we are referred to *Lyons* v. *Munson* (99 U. S. 684).  That case decided nothing of the kind.  On the contrary, what it did decide reveals at once the vice of the appellant's position.  The court held in that case that the county judge "unquestionably had jurisdiction," and that his judgment could not be attacked collaterally for error or mistake, but remained conclusive, like any other judgment, until reversed in a direct proceeding. Who is right and who is wrong in this conflict of authority it is not necessary to consider, for we are reasoning now on the assumption that no jurisdiction existed, for the purpose of testing the bearing of that position upon the present case.  When, therefore, the Federal court held that the county judge had jurisdiction, and his judgment unreversed was conclusive, it followed as a corollary that the bonds were good, the commissioners agents of the town, and their contracts with Parshall capable of being made.  And it thus becomes apparent that the appellant's argument and its asserted result are founded upon an inconsistency.  The bonds are valid to get a basis for a recovery against Parshall, and are invalid to cut off his equities and increase the recovery.  This cannot be permitted.  The plaintiff's case must be consistent with itself.  It cannot stand upon two contradictory propositions.  One theory or the other is false.  Both cannot be true, and we cannot sustain a recovery by mingling falsehood with truth.  There was jurisdiction, or there was not ; the bonds were good or were void; the commissioners were agents of the town, or mere strangers and wrong-doers.  The plaintiff must choose one of these alternatives, and cannot weave both into its fabric.  Having chosen, it must adhere to it all through the case, and take the logical consequences upon

every issue. The town is here with a verdict in its favor of over $30,000, and complaining, not of that recovery, but that it is not large enough. If its theory of the utter nullity of the bonding proceedings is to test its rights, it has sued wrongdoers for simulating its bonds and recovered $30,000 damages, without proof of having suffered the loss of a single dollar, and when on its own theory it never could be made to lose any thing except the expenses of its defense, which are nowhere proved in the case. The pressure of this difficulty must have been felt by the learned counsel for the appellant when he was compelled to insist in his brief that " as it appeared when he " (Parshall) " was sworn, that he had sold $76,008.49 of " the bonds, " equity requires him to pay that sum to the town to *indemnify* it against his unlawful act." Apparently this would require us to say that money may be recovered before a loss has occurred, as a precaution against such future possibility. We think, therefore, that the plaintiff's theory is suicidal. Instead of sustaining a claim that larger damages should have been awarded, it shows that too much has already been given.

Of course it is now easy to see that the recovery went on an entirely different ground, and the plaintiff all through the trial stood upon the theory that the bonds, if not in fact good by the law of the State, were so by that of the Federal courts, and could be so treated in the hands of Parshall and as against him. He could not assert the invalidity of the bonds, nor deny his liability as trustee. He had voluntarily taken a position which estopped him from doing either, and the town was at liberty, even though the bonds were void under the State law, to submit to the rule of the Federal court, to treat them as good, to assume a liability and compel the trustee to account on that basis. What it tried to do at one and the same time was to resist the liability of the town on the ground that it had issued no bonds, and at the same time collect the proceeds of their sale from the wrong-doer; in other words, to repudiate the bonds and yet obtain their proceeds.

It is probable that the complaint was drawn on a supposition that the whole issue of bonds was in the hands of Parshall, and

that none had been sold. The relief asked was that they. be delivered up to the town to be canceled. On the trial the fact that some had been sold was developed. In view of that fact it was necessary for the town to determine its line of action against Parshall. It could not claim from him the proceeds of the bonds sold without conceding their issue and sale, and adopting as the law of the case the Federal doctrine which made them good and so made the town liable. On no other ground could it entitle itself to such proceeds, for its sole right to them came from that concession, and an affirmance of the action of the commissioners in making their contract. The only other alternative was to treat Parshall as a stranger and wrong-doer, and ask damages for the tort. With this alternative before it the town made its choice. It demanded and is still demanding the proceeds of the sale. It is before us now claiming to recover the whole of such proceeds, and appealing because it has got only a part. It put in evidence on the original hearing the bonding papers and Parshall's agreement with the commissioners ; proved his possession of the bonds under it ; showed what he had sold and what remained ; established the insolvency of the railroad company, and the sale of its property on mortgage foreclosure, as well as its non-performance of the conditions on which alone it was entitled under the trust agreement to receive the bonds from the trustee; when the interlocutory judgment was reached, filed no exceptions to the report of the referee adjudging the validity of the agreements and Parshall's liability under them ; and even after the accounting, upon the final submission to the referee, in its requests to find, it continually spoke " of the unreturned bonds and coupons *of the plaintiff*, and the proceeds thereof " ; of the " overdue coupons *of the plaintiff ;*" of the " disposition or expenditure of *the plaintiff's bonds,* or the proceeds thereof by said defendant ;" and claimed that " the defendants have not in good faith laid out and expended any of the *plaintiff's bonds ;*" and that " Parshall is liable for the par value and accrued interest on *all outstanding bonds and coupons of the plaintiff* sold or transferred by him, .*  *  *  which is the sum of $76,008.59." In all

this the ground upon which the case was tried and the decision rested is very apparent. The plaintiff has had the benefit of the Federal law in making Parshall liable for the proceeds of the bonds, and must not now be permitted to retain that benefit and deny to Parshall the application of the same law. He cannot be permitted to invoke one rule to recover the proceeds, and a contrary one to defeat Parshall's equity. We must hold the plaintiff to the position which it deliberately selected and on which alone its recovery can stand. And we must do that for the further reason that the ground it now takes shows that it has not the least reason to complain of the verdict which its position on the trial enabled it to secure.

But the appellant makes other objections which are claimed to be good even though the case stands upon the theory we have sustained.

The allowance of commissions to Parshall is criticized. The argument against them goes very largely upon the ground already disposed of, that the town was not bonded at all and therefore Parshall could not be a trustee, and upon the further ground that the referee erred in finding that he acted in good faith throughout the transaction. We must be content with the referee's finding in the latter respect. The question was one of fact, and depended upon the inferences to be drawn from the circumstances taken together. Parshall acted as trustee, and his possession of the bonds was in that character and that only. Assuming that he acted in good faith and did nothing to forfeit his right to commissions, their allowance was proper.

Certain items in the account depend upon the second or modified agreement of the commissioners, which is claimed to have been invalid mainly upon two grounds; first, that the power of the commissioners to contract was already exhausted; and second, that the last agreement was not signed by the railroad company. The commissioners were authorized to agree with the company upon the mode and conditions upon which the bonds or their proceeds were to be delivered. (Laws of 1870, chapter 507.) They made such agreement providing that the intermediate trustee should deliver the bonds or their pro-

ceeds only as the progress of work through the county of Wayne should justify such expenditure. At a later period, the commissioners, becoming satisfied that it was " for the interest of the town of Lyons that the bonds or their proceeds should be applied to the building and constructing of the railroad of said company from its intersection with the Lake Ontario Shore railroad to a suitable point at or near the village of Geneva," gave a written authority to Parshall to pay out the bonds and for such construction. This permitted payment to be made for work done in Ontario county as well as Wayne and was practically a modification of the original agreement, or a waiver in writing of the condition limiting the expenditure to Wayne county. Most certainly the trustee who acted in accord with the written consent of the agents of the town is entitled to be protected in what he did upon the faith of that consent.

Some other objections are made to the allowances in the account which we have carefully considered but do not need to discuss. We find no error to justify a reversal.

The judgment should be affirmed, with costs.

All concur for affirmance, except TRACY, J., dissenting.

Judgment affirmed.