In Matter of the Petition of ROBERT V. HOWLAND and others, Respondents, *v.* EDWARD ELDREDGE, and ETHAN ALLEN, Assessors of the Town of Springport, Appellants.

Where, by an act of the legislature authorizing a town to issue its bonds to aid in the construction of a railroad, it is declared that such power shall not be exercised until the consent in writing of a majority of the tax-payers owning more than one-half the taxable property shall be obtained, and it is provided that the proof of such consent shall be by the affidavit of the assessors of the town, and it is *made the duty* of the assessors to make such affidavit, whenever the requisite consent shall be obtained.—*Held* the assessors having refused, that, however clearly it was made to appear to the court that the requisite consents had actually been obtained, a mandamus will not be granted against the assessors to compel them to make such affidavit. In such case, the court has power to compel the assessors by mandamus to proceed and examine the evidence, and determine the fact, and *if, from their determination*, it appears that the requisite consent has been given, to make affidavit in accordance therewith, but will not compel them to determine in any specified way, and make affidavit according to such *enforced* determinatio

(Cause argued December 20th, 1870; and decided January 24th, 1871.)

APPEAL from an order of the General Term of the Fourth department of the Supreme Court, affirming an order granted at the Cayuga Special Term awarding a peremptory mandamus directed to the defendants, Edward Eldredge, and Ethan Allen, assessors of the town of Springport, Cayuga county, commanding them to forthwith execute their affidavit, duly verified, to the effect that a majority of the tax-payers of the said town owning more than one-half of the taxable property of said town assessed and appearing on the assessment roll of

the year 1868, have duly fixed upon the sum of $100,000, and duly assented in writing to the issuing of bonds of said town therefor, to be used and applied in the construction of the Cayuga Lake railroad, under and in accordance with the provisions of the act of the legislature passed in 1869 (chapter 314 of the Laws of 1869), entitled An act to facilitate the construction of the Cayuga Lake railroad, and to authorize the town of Springport, Cayuga county, to subscribe to the capital stock thereof.

This order was granted on the sworn petition of the three persons appointed commissioners under the first section of the act, the Cayuga Lake Railroad Company, and two other tax-payers of the town. This petition set forth, that, prior to the 1st of January, 1870, the consents in writing of a majority of the tax-payers owning more than one-half the taxable property assessed and appearing on the assessment roll for the year 1868, *i. e.*, the written consents of 311 tax-paying inhabitants, who were assessed upon said roll $620,500 (the whole assessment being $1,105,371), were duly procured and obtained, and executed, proved and acknowledged in all respects according to the provisions of the said act. That thereupon the commissioners requested the defendants' assessors, showing them the said consents in writing, proofs and acknowledgments, and the assessment roll of 1868, to examine, and make the necessary affidavit. That, they refused.

The assessors, in their opposing affidavit, allege that they examined the assessment roll and the consents; that the number assenting, exclusive of those who paid merely a military or dog tax, were but 217 in all, representing an aggregate of but $543,527 of property, being less than one-half of the taxable property on the roll. And then state, in detail, certain reasons why, as they claim, deductions should properly be made, even from this number and amount, and they make certain objections to the form of the acknowledgment. They conclude by the allegation that they acted in good faith in the examination, and found, as a result thereof, that a majority of the taxable inhabitants of said town of Springport,

owning a majority of the taxable property of said town, as appears upon the said assessment roll of the year 1868, *had not* given their consent for the bonding of the town.

The judge referred it to a referee to report the facts as to the consent and the taxable property, with his conclusion. The referee, after hearing proofs on both sides, reported that the total amount assessed was as already stated. The whole number of persons appearing upon the roll were 562, "a majority of which is, property, $552,586; persons, 282;" that the whole number assenting were 303, and if those taxed for dogs and military service should be excluded, there would be thirty-seven majority assenting. The referee found in detail in favor of the relators, as to the questions disputed between the parties, as to the construction of the act, and the deductions and irregularities claimed by the assessors. These points are not stated, as this court did not come to the question whether or not a majority of the tax-payers of the town, owning more than one-half of the taxable property, had actually properly executed the consent.

*George F. Danforth,* for the appellants, on the question discussed in the reported opinion, cited *Bushell's case* (Vaughan's Rep., 148); 2 Russell on Crimes, 597; *State* v. *Cruikshank* (6 Black., 62); 1 Hawk's Ch., 69, § 6; *Ingram* v. *Robbins* (33 N. Y., 427); *Duanesburg* v. *Jenkins* (40 Barb., 574); *Tallman* v. *Bigelow* (10 Wend., 421); *Loder* v. *Phelps* (13 Wend., 46); *Smyth's case* (4 Coke's Inst. Cap., 74, p. 323).

*James R. Cox,* for the respondents.

GROVER, J. Section 2 of the act to facilitate the construction of the Cayuga Lake railroad (Vol. 1, Laws of 1869, 677), makes the exercise of the powers conferred upon the commissioners appointed pursuant to section 1 of the act depend upon a majority of the tax-payers of the town, and owning more than one-half of the taxable property of said town

assessed and appearing upon the assessment roll of 1868, giving their consent in writing to the bonding of the town pursuant to the act, which consent shall be proved or acknowledged in the manner provided by the act, and provides that the proof required to show that a majority of the taxable inhabitants representing a majority of the taxable property of the town have given the requisite consent, shall be the affidavit of the assessors, or a majority of them, of said town, and declares it to be the duty of the assessors to make such affidavit, whenever such consent shall be obtained, if so obtained, on or before the 1st day of January, 1870. It is conceded that the making of this affidavit by the assessors is a condition precedent to the right to bond the town pursuant to the act. That however manifest the fact that a majority of the tax-payers owning a majority of the taxable property have given their consent pursuant to the act may appear, yet no bonds of the town can be issued until the affidavit of the assessors is made as required. A very important question presented by this appeal, is whether this affidavit must be made in accordance with the conclusions of the assessors, derived from an examination of the evidence by them, and the exercise of their judgment thereon, or whether they may be compelled by the court by mandamus to make it directly contrary to what they believe the truth to be, but in accordance with what the court has, upon motion, determined to be the real fact. It would seem that the mere statement of the question was sufficient to suggest the proper answer. It is the assessors to whom the power is given to examine the evidence upon this question, and it is upon their conclusion therefrom, and the exercise of their conscience thereon, that the power to bond the town depends, and not that of any other board or tribunal. Had the latter been intended, an appeal from the determination of the assessors would have been given to some designated board or tribunal, and the judgment of the latter substituted in place of the affidavit of the assessors, in case it differed from their determination. The affidavit of the assessors must be in

accordance with what they believe to be the fact, otherwise they incur the moral guilt of perjury, irrespective of any determination the court may have made thereon. By the seventeenth section of the act, false swearing by the assessors is made perjury, and, should it turn out that they are right and the court wrong in their views, the only ground upon which they could escape conviction would be that the affidavit was not their voluntary act, but the result of coercion, which they had no power to resist. If this appeared upon the face of the affidavit, it is entirely clear that in no legal sense would it be their affidavit at all, but a mere nullity. It follows that there is no remedy provided by the act for the correction of errors into which the assessors may fall, in respect to the matter referred to their determination. The statute having declared it to be their duty to make the affidavit when the fact exists, the court have power, by mandamus, to compel them to proceed and examine the evidence and determine the fact, and if, from their determination, it appears that the requisite consent has been given, to make an affidavit in accordance therewith. This is the universal rule in respect to all subordinate courts and tribunals clothed with the exercise of judgment or discretion. They may by mandamus be compelled to proceed and determine the matter, but cannot be compelled to decide in any particular way. If they could, it would no longer be their judgment or discretion, but that of the court awarding the writ. Their determination is conclusive, unless some mode of review is provided. The present case is no exception to this rule. When the assessors, in answer to the order to show cause why they should not make the affidavit made and presented to the court an affidavit to the effect that they had examined the evidence, and that a majority of the tax-payers of the town owning a majority of the taxable property had not given their consent, the court should have dismissed the proceeding. It had no power to examine the case further and compel the assessors to make an affidavit entirely to the contrary. The judgment appealed from must

be reversed and the proceedings dismissed with costs to the appellant.

All the judges concurring, except ANDREWS, J. (absent).

Order reversed. PECKHAM, J., also read an opinion for reversal, holding that the assessors were right in denying that a majority owning a majority of the property assessed had properly assented.