JOHN S. CAGWIN, Respondent, *v.* THE TOWN OF HANCOCK, Appellant.

The jurisdiction of *quasi* judicial officers to make a decision in any case is always open to inquiry, and the decision may be attacked collaterally for want of jurisdiction.

There can be no *bona fide* holder of town bonds within the meaning of the law applicable to negotiable paper, as they can only be issued by virtue of special authority conferred by some statute, and are only binding upon the town when issued in the way pointed out by the statute.

All persons, therefore, taking such bonds are chargeable with knowledge of the statute under which they were issued, must see to it that its provisions were complied with; and in the absence of some provision making the action of the officer or agents of the town binding and conclusive, the fact that the holder of such bonds purchased for value and in good faith, does not preclude the town from showing that they were illegally issued.

The decisions of the Federal courts holding a contrary doctrine held not to be controlling.

Under the provisions of the act of 1866 (§ 2, chap. 398, Laws of 1866) authorizing certain towns to subscribe for the stock of the N. Y. & O. M. R. R. Co., and to issue bonds for moneys borrowed to pay therefor, provided the consent in writing of a majority of the tax payers, owning more than one-half of the taxable property of the town shall first have been obtained, and provided that the fact that such majority has been obtained, "shall be proved by affidavit, in writing," of one of certain specified town officers, and declaring that such affidavit " or a certified copy thereof shall be evidence of the facts therein contained," the affidavit is not conclusive but only *prima facie* evidence of the facts and may be disputed.

Accordingly *held*, in an action to recover the amount due upon certain interest coupons cut from bonds issued by railroad commissioners appointed for defendant under said act, and which had been purchased for value and in good faith, that defendant was not precluded by an affidavit of its assessor from showing that in fact the consent of a majority of the tax payers of the town had not been obtained.

*People* v. *Mitchell* (35 N. Y. 551), *Bank of Rome* v. *Village of Rome* (19 id. 20), distinguished.

*Cagwin* v. *Town of Hancock* (22 Hun, 201), reversed.

(Argued March 7, 1881; decided March 15, 1881.)

APPEAL from order of the General Term of the Supreme Court, in the third judicial department, made September 24,

1880, reversing a judgment in favor of plaintiff, entered upon the report of a referee. (Reported below, 22 Hun, 201.)

The nature of the action and the material facts appear in the opinion.

*Wm. Gleason* for appellant. The towns of this State have no power to bond for railroads unless it has been expressly conferred by statute. (*Town of South Ottawa* v. *Perkins*, 4 Otto, 258, 266; id. 429; 13 Wall. 304; 3 id. 327; *Wiesmer* v. *The Village of Douglas*, 64 N. Y. 92; *Starin* v. *The Town of Genoa*, 23 N. Y. 439; *Gould* v. *The Town of Sterling*, 23 N. Y. 440, 462; *People* v. *Mitchell*, 35 id. 551; *Donnelly* v. *The Town of Ossining*, 18 Hun, 352; 1 R. S. 337, § 2.) Where there has been no authority to issue bonds, they can never have any legal inception, and there can be no *bona fide* holder of them in whose hands they can be valid. (*Town of Venice* v. *Woodruff*, 62 N. Y. 465; *The Township of Oakland* v. *Skinner*, 4 Otto, 255; *Town of South Ottawa* v. *Perkins*, id. 258, 260; id. 269; *Horton* v. *Town of Thompson*, 71 N. Y. 513, 521; *Weismer* v. *Village of Douglas*, 64 id. 92; *Starin* v. *Town of Genoa*, 23 id. 439, 456; *People* v. *Mead*, 24 id. 114; *S. C.*, 36 id. 224; *People* v. *Smith*, 45 id. 773; *People* v. *Knowles*, 47 id. 415, 419; *People* v. *Spencer*, 55 id. 1; *Town of Venice* v. *Woodruff*, 62 id. 465; *Town of Springport* v. *Bank*, 75 id. 397; *Buchanan* v. *City of Litchfield*, U. S. Court, Nov. 22, 1880; 22 Alb. L. J. 516; *Dodge* v. *County of Platte*, 82 N. Y. 218; 76 id. 185; 78 id. 362–367; 79 id. 171; *Falconer* v. *The Buffalo & Jamestown R. R. Co.*, 69 id. 491, 497; 45 id. 772; 46 id. 110; 71 id. 309; 55 id. 1; *Angel* v. *Town of Hume*, 17 Hun, 374–384.) The affidavit of the assessors in no wise estopped the town from showing that the requisite consents were not given by a majority of the tax payers, nor for a major part of the property on the roll. (*Scipio* v. *Wright*, 11 Otto, 665, 667, 675; 75 N. Y. 406; 23 id. 464.) Neither the affidavit of an assessor, or town or county clerk is a judgment, nor is the issuing of the bonds a judgment binding the town. (4 N. Y. 515, 518, 522; *People* v. *Batcheller*, 53 id. 128; *Stewart* v.

*Palmer*, 74 id. 183–188, 189, 190, 191–196.) Purchasers of the bonds were chargeable with notice of the statute under which they were issued, and were bound to see to it that its provisions were complied with. (*Peck* v. *Burr*, 10 N. Y. 299 ; *Stafford* v. *Williams*, 12 Barr, 240–243 ; *Donovan* v. *The Mayor, etc., of N. Y.*, 33 N. Y. 291, 292 ; *McDonald* v. *Mayor, etc.,* 68 id. 23 ; 2 Den. 110 ; 33 N. Y. 293 ; 1 Den. 510 ; 8 Allen, 109.) Where any court or officer has acted without jurisdiction the acts are void, and no appeal or *certiorari* is necessary to get rid of them, but whoever acts thereunder is a trespasser. (*Van Rensselaer* v. *Witbeck*, 7 N. Y. 517 ; *Mygatt* v. *Washburn*, 15 id. 316 ; *Whitney* v. *Thomas*, 23 id. 281 ; *Cruger* v. *Dougherty*, 43 id. 107, 121 ; *Overing* v. *Foote*, 65 id. 263 ; *Hallock* v. *Rumsey*, 29 S. C. 89–91 ; *People* v. *Van Slyck*, 4 Cow. 297, 316 ; *People* v. *Cook*, 8 N. Y. 67.)

*W. J. Welsh* for respondent. The consents in writing filed and recorded have been made, by statute, the record evidence upon which officers were authorized to act, and cannot be impeached by parol evidence in a collateral proceeding. (*Pierce* v. *Wright*, 45 How. 6 ; 2 Stark. 544 [5th Am. ed.] ; *People* v. *Zest*, 23 N. Y. 140 ; *Pierce* v. *Wright*, 45 How. 6.) The defendant is concluded by the affidavit of the assessors, and cannot in this action question the sufficiency of the consents to bond. (*Bank of Rome* v. *The Village of Rome*, 19 N. Y. 24 ; *Com'rs of Knox County* v. *Aspinwall*, 21 How. [U. S.] 546; *Shell* v. *Telfore*, 4 N. Y. Legal Observer, 307 ; *Com'rs of Douglas County* v. *Boles*, 4 Otto, 109 ; *Howland* v. *Eldridge*, 43 N. Y. 460 ; 1 Whart. on Ev. [2d ed.], § 1 ; *Pierce* v. *Wright*, 45 How. 7 ; *People* v. *Mitchell*, 35 N. Y. 552 ; *Bk of Rome* v. *The Village of Rome*, 19 id. 22 ; *Town of Colma* v. *Eaves*, 2 Otto, 484, 487 ; *Thompson* v. *Lee County*, 3 Wall. 327 ; *Town of Venice* v. *Murdock*, 2 Otto, 498 ; 4 id. 205 ; *Block* v. *Commissioners*, 9 id. 686 ; *People ex rel. Town of Rochester* v. *Deyoe*, 2 N. Y. S. C. [T. & C. ] 146.)

EARL, J.   This action was brought to recover the amount due upon certain interest coupons, which had been cut from bonds issued by the railroad commissioners appointed for the defendant under the act chapter 398 of the Laws of 1866, en-titled "An act to facilitate the construction of the New York and Oswego Midland Railroad, and to authorize towns to sub-scribe to the capital stock thereof," and the several acts amend-atory thereof.   Claiming authority under the acts referred to, the railroad commissioners in 1871 subscribed for $100,000 of the stock of the New York and Oswego Midland Railroad Com-pany, and in the years 1871 and 1872 issued bonds of the de-fendant to pay for such stock.   The bonds were delivered by them, upon the orders of the railroad company, to one Culver, who was a contractor engaged in building the railroad, and who had no knowledge when he received the bonds that the de-fendant made any question as to their validity or legality.   He afterward sold all the bonds to divers persons.   William Gil-man purchased some of them in good faith and for full value, and he cut off the coupons and sold them to the plaintiff for their full value.   The defendant defended this action upon the ground mainly that a majority of the tax payers of the town, owning or representing more than one-half of the taxable prop-erty, did not consent in writing to the bonding of the town as required by the acts.   The referee sustained this defense.   But upon appeal by the plaintiff to the General Term, his decision was reversed, and it was there held that the affidavit of the assessor, stating that the requisite number of tax payers had consented to bonding the town, was, in favor of the plaintiff, a *bona fide* holder of the coupons, conclusive upon the town, and precluded proof that they had not in fact consented.

The referee found, as a matter of fact, that the requisite number of tax payers had not consented to bonding the town; and as his finding was not disturbed by the General Term, it is not now disputed that it concludes us.   The main inquiry here, then, is as to the conclusive nature of the affidavit of the assess-ors; and that inquiry involves an examination of the acts of the legislature relating to the subject.

Section 1 of the act of 1866 provides that upon the application of twelve or more freeholders of any town, the county judge or the Supreme Court may appoint the railroad commissioners. Section 2 provides that it shall be lawful for the commissioners to borrow on the credit of the town such sum of money as the tax-paying inhabitants shall fix upon by their assent in writing, not exceeding in amount thirty per cent of the assessed valuation of the real and personal property of the town, as shown by the assessment-roll, and to execute bonds for the sum so borrowed, providing, however, that the consent shall first be obtained in writing of a majority of the tax payers of such town, owning or representing more than one-half of the taxable property of the town assessed and appearing upon the assessment-roll, which consent shall be proved or acknowledged in the same manner as conveyances of real estate are proved or acknowledged. It is further provided that the fact that a majority of the tax payers representing a majority of the taxable property has been obtained and acknowledged, " shall be proved by the affidavit in writing " of one of the assessors of the town, or of the town clerk, or county clerk, which shall be indorsed upon or annexed to the written consent, and the consent and affidavit shall be filed in the town clerk's office of the town, and a copy thereof in the county clerk's office of the county; and that " the same, or a certified copy thereof, shall be evidence of the facts therein contained, and shall be admitted in evidence in any court in this State and before any judge or justice thereof; and it shall be the duty of the said assessors and town and county clerks to make such affidavit when said consent shall have been obtained as provided in this section."

It will thus be seen that the commissioners had no power to issue any bonds until the requisite consent of the tax payers had been obtained. That was made a fundamental condition of their action, and it was the manifest intention of the legislature that the bonds should not be issued without such consent.

After the consents had been obtained the section imposed a duty upon the assessors, town clerk and county clerk. That duty did not arise until the requisite number of consents had

been obtained. They had no right to act and could not be compelled to act before. They were required to make the affidavit, in the language of the act, "when the said consent shall have been obtained as provided in this section." There was nothing in the act expressly imposing upon them the duty of inquiring to ascertain whether the requisite consents had been obtained, or to make an adjudication upon that subject; but such a duty may be implied. They had no right to call and examine witnesses, and there was nothing really resembling a judicial inquiry to be made by them. They were to take the consents and compare the names on them with the names on the assessment-roll of the town, and thus, with perhaps such other information as they could obtain, determine whether the requisite number of tax payers had consented. They were to swear no witnesses, conduct no judicial inquiry under the sanction of oaths, and render no formal judgment. If they believed the requisite number of the tax payers had consented, they were to make the affidavit. They had no greater facilities for reaching the truth in the matter than any other citizens. It cannot be supposed that the legislature intended that a single assessor, without hearing any parties, without the aid of sworn witnesses, and usually without legal skill or knowledge, should conclusively determine the puzzling questions of facts, and the difficult and perplexing questions of law, which frequently attend upon an inquiry as to whether the requisite consents of tax payers have been obtained, and that he should thus, by his simple *ex parte* affidavit, conclusively bind the town to the limit of thirty per cent of all the taxable property therein. If it had been intended to give such dangerous and extraordinary force to such an affidavit, we may suppose that the intention would have been plainly expressed in the statute, and that it would not have been left to inference. A contrary intention is evinced in the explicit and emphatic manner in which the requirement of the consent of the majority is placed in the acts. In the act, chapter 61 of the Laws of 1868, entitled "An act to facilitate the construction of the New York and Oswego Midland Railroad, and to amend the several acts in relation

thereto," this intention is plainly manifested. In section 1 it is provided, that in every case where consents in writing shall have been obtained of the "majority of the tax payers appearing upon the assessment-roll of any town for the years 1865 or 1866 to the borrowing of money on the faith and credit of the town, etc., and when such tax payers shall own or represent more than one-half of the taxable property, such consents shall be valid and effectual and shall not be invalidated" for certain defects or irregularities stated, provided a majority of the tax payers owning or representing a majority of the taxable property have consented. Section 2 again provides that no consent of tax payers, nor the bonds issued or to be issued upon the faith of such consent, shall be invalidated or held invalid on account of certain defects or irregularities, provided that the consent of the requisite majority has been obtained. Thus the legislature makes it emphatic that the fundamental prerequisite, on all occasions and for all purposes, must be the majority consent.

If the legislature had intended that there should be a conclusive determination that the requisite consents had been obtained before the bonds could be issued, it would have provided a tribunal, consisting of the commissioners, or the county judge, or possibly the assessors, which was to take proofs, hear parties, conduct a judicial inquiry and make a judicial determination.

If the law had simply required the assessors, town clerk or county clerk to make and file an affidavit that a majority of the tax payers owning a majority of the taxable property had consented, and had stopped there, the affidavit would not have been any evidence of the facts stated in it, and a person suing upon one of the bonds would have been obliged to prove affirmatively that the requisite consents had been obtained (*Starin* v. *Town of Genoa*, 23 N. Y. 439; *People* v. *Mead*, 36 id. 224; *Town of Venice* v. *Woodruff*, 62 id. 463); and yet the affidavit in that case would have been just as much a judicial determination as the one we are considering. Such an affidavit is, therefore, evidence only so far as the law makes it evidence,

and all it says is, that " it shall be evidence of the facts therein contained." This language is satisfied without holding that it shall be conclusive evidence. It is satisfied by holding that it is competent or *prima facie* evidence. By giving the language a more extended meaning the affidavit would have more force, we think, than was intended by the legislature. Where it was intended in similar acts that the affidavit, or the preliminary inquiry as to the number of consents, should be conclusive, it has been so expressly provided (Laws of 1863, chap. 19, and of 1864, chap. 402), or provision has been made for a formal hearing, for proofs and a judicial determination. (Laws of 1869, chap. 907, §§ 2, 9.) Where it is intended in a statute to make an affidavit or any writing conclusive evidence, there is usually something in the statute clearly to indicate such intention. (1 R. S. 173, § 22 ; id. 412, § 81 ; 2 R. S. 377, § 2 ; Code, § 1933. See also the statutes and authorities cited by Judge ALLEN in *People ex rel. Martin* v. *Brown*, 55 N. Y. 196.) In the case of *People ex rel. Martin* v. *Brown*, that learned judge, in an able discussion of the subject, holds that this affidavit is not conclusive evidence, but only competent or *prima facie* evidence of the facts stated in it. To give this affidavit the effect claimed for it, we would have to go against the spirit of many decisions in this court. The bonding acts are now regarded as hostile to a sound public policy. As said by Judge ANDREWS in *Town of Wellsboro* v. *N. Y. & C. R. R. Co.* (76 N. Y. 185), they " are subversive of the just rights of the minority, who do not consent to the issue of the bonds," and we have never been disposed to uphold bonds issued under these acts, except upon a strict and exact compliance with the act which authorized their issue. To hold that the *ex parte* affidavit of one assessor would be sufficient in its effect to bond a town when the facts authorizing it to be bonded did not actually exist, would be giving a construction to the language and purposes of this act altogether too liberal. In *The People* v. *Mitchell* (35 N. Y. 551), the affidavit that the requisite consent had been given was made conclusive by the statute. In *Town of Springport* v. *The*

*Teutonia Sav. Bank* (75 N. Y. 397), the statute made the affidavit presumptive evidence; and hence those cases have very little bearing upon this case, although the principle to be deduced from them is favorable to the conclusion we reach. In *Bank of Rome* v. *Village of Rome* (19 N. Y. 20), the village was authorized to subscribe for the stock of a railroad company, provided that two-thirds of the tax-paying electors of the village should first approve the subscription, and the village was authorized to issue bonds to raise money to pay for such subscription, and railroad commissioners were named in the act. There was no dispute that the subscription had been approved by the tax payers. But it was provided in section 11 of the act (chap. 283, Laws of 1853), that the commissioners should have no power or authority to negotiate, sell or transfer the bonds, or create any liability whatever, except upon the express condition that $500,000 should first have been subscribed to the stock by other parties; and the commissioners, before negotiating or transferring any of the bonds, should make and subscribe a certificate in writing that such subscription of $500,000 had been actually made, and that in their judgment and belief the same had been made in good faith and by persons of ability sufficient to pay their several subscriptions. It was held that the certificate thus made was conclusive evidence in favor of *bona fide* holders of bonds that the requisite subscriptions had been made. That case is claimed as an authority for the plaintiff's contention in this case. But while the distinction between the two cases is not very broad, yet there is a distinction which deprives that case of its character as a controlling authority in this. There the subscription to the stock had been regularly authorized. There was nothing more for the village or its tax payers to do. Whatever else remained was committed to the railroad commissioners named in the act, as agents of the village. They were to determine whether the other subscriptions had been made, and if they found they had been, they were to issue the bonds, acting as agents of the village. The difficulty in this case is that the fundamental fact, the majority consent, is wanting. The town was to act through a majority of its tax

payers, and such action it never took. Until such action was taken no officer or agent could bind it by bonds issued or stock taken under the act.

It is true that the assessors, in determining whether the requisite consents had been given and in making the affidavit, exercised *quasi* judicial functions. (*Howland* v. *Eldredge,* 43 N. Y. 457; *People ex rel. Yawger* v. *Allen,* 52 id. 538.) And that their determination embraced in their affidavit is in the nature of a judgment. But regarding the affidavit as a judgment, it was a judgment which they could render only if they had jurisdiction. By the express terms of the statute they were not to make the affidavit until the requisite consents were obtained. Until that time they had no jurisdiction to act. They could not obtain jurisdiction by determining that they had it. Whether *quasi* judicial officers and courts of limited special and inferior jurisdiction have jurisdiction to make a decision in any case is always open to inquiry, and their decision in any case can be attacked collaterally for want of jurisdiction. It is made the duty of town assessors to ascertain all the property and persons in their town liable to taxation, and in making the determination and assessing the property, their action is of a judicial character; and yet they cannot obtain jurisdiction over property or persons by determining that they have it. They must first have jurisdiction before they can lawfully act. (*Nat. Bank of Chemung* v. *City of Elmira,* 53 N. Y. 49.) So here, the assessors had no jurisdiction to make the affidavit and render their *quasi* judgment until the requisite consents had been obtained; and if the consents had not, in fact, been obtained, their determination that it had been could not give them unimpeachable jurisdiction.

The legislature was undoubtedly competent to declare what effect this affidavit as a *quasi* judgment should have, and it has said that it shall be evidence of the facts therein stated. It furnished *prima facie* evidence which it would generally be safe for all persons to rely on. In a suit upon the bonds it placed the burden upon the town defending against the bonds

to show that the affidavit was made without jurisdiction, in that the requisite majority of the tax payers had not actually consented. So that the affidavit served a. very useful purpose, although not having the effect of a conclusive judgment binding upon all persons.

But the claim is made that the affidavit ought to be conclusive in favor of *bona fide* holders of the bonds. But there can be no *bona fide* holders of bonds, within the meaning of the law applicable to negotiable paper, which have been issued without authority. A town has no general authority to issue such bonds. It can issue them only by virtue of special authority conferred by some statute. Unless issued in the way pointed out by statute, they cannot bind the town. The statute specifies the powers of the agents of the town and the precise conditions upon which the bonds could be issued, and all persons taking the bonds are chargeable with knowledge of the statute, and they must see to it that the statute has been complied with before they can with absolute safety take the bonds. Such is the law as laid down in this State. (*Town of Venice* v. *Woodruff*; *Starin* v. *Town of Genoa*; *People* v. *Mead, supra*.) There are undoubtedly decisions of the Federal courts holding in favor of *bona fide* holders of such bonds a different doctrine; but those decisions have not been regarded as controlling authority in this court.

There are no facts in this case upon which it can be held that the town can be estopped from asserting the invalidity of the bonds. As a town, there is no act or omission chargeable to it upon which an estoppel can be based.

It follows, therefore, that the order of the General Term should be reversed and that the judgment upon the report of the referee should be affirmed, with costs.

All concur, except RAPALLO, J., absent.

Order reversed and judgment accordingly.