R. GRIEVE *et al. vs.* CHAS. T. GULICK, Minister of Interior.

MANDAMUS. ON APPEAL FROM AUSTIN, J.

SPECIAL TERM, DECEMBER, 1883.

JUDD, C. J., McCULLY and AUSTIN, JJ.

Mandamus lies to compel the Minister of the Interior to present to the King in Privy Council a petition for a charter of incorporation, that being a matter in which the statute does not allow him discretion.

Judd, C. J., dissenting.

OPINION OF A MAJORITY OF THE COURT, BY AUSTIN, J.

THIS case comes here on appeal from a judgment allowing a peremptory mandamus against the defendant, requiring him to

present to the King in Privy Council the plaintiffs' petition for a charter of incorporation.

Section 1442 of the Civil Code provides that "The Minister of the Interior shall have full power, subject to the provisions of this Chapter, in his discretion, by and with the advice and consent of the King in Privy Council, to grant charters of incorporation."

The Minister, then, has no discretion to grant a charter, except with the King's advice and consent. The King in Privy Council may veto it. That is, a discretion to grant a charter rests in the King and Minister, the King being in Privy Council. But the discretion to grant a charter, by this Section, necessarily includes the discretion to refuse a charter, and this right also rests in the Minister by and with the advice and consent of the King in Privy Council. In any case where, upon this joint action, a charter is not granted, it is refused. The only power of refusal which rests anywhere by the Section, is to be inferred or implied from the power to grant.

In that refusal the Minister necessarily takes part with the King in Privy Council. He has no other discretion to refuse, and none is provided for anywhere. He cannot refuse alone any more than he can grant alone. The Section must be construed as though it read, "The Minister shall have full power in his discretion, by and with the advice and consent of the King in Privy Council, to grant (or refuse) charters of incorporation."

Section 10 of Chapter 3 of the Civil Code provides "Where the words of a law are dubious, their meaning may be sought by examining the context, with which the ambiguous words, phrases and sentences may be compared, in order to ascertain their true meaning."

Section 12 provides "One of the most effectual ways of discovering the true meaning of a law, when its expressions are dubious, is by considering the reason and spirit of it, or the cause which induced the Legislature to enact it."

Section 13 provides, "When the words of a law are ambiguous, every construction which leads to an absurdity should be rejected."

These are wise rules, and are epitomes of the rules of construction universally adopted in England and America.

If there were any doubt of the foregoing construction of Sec. 1442, the application of these rules will dissipate it.

The object of Chapter XXXI, on corporations, is to promote the industrial enterprises of the country, by allowing the massing of capital in corporate bodies under proper restrictions.

Section 1445 provides for an application for a charter to the Minister of the Interior, by written petition accompanied by proofs that three-fourths of the shares have been subscribed for, and setting forth in detail the objects of the corporation, its location, the amount of stock, if a stock company, and all other incidents attached to it.

If upon such a petition being presented, the Minister of the Interior may suppress it without explanation, and never present it to the King in Privy Council, he may, at his own will, without cause, practically destroy this beneficent statute. The Legislature did not so intend. They intended that every such petition should be presented to the King in Privy Council, and there be passed upon for acceptance or rejection. If it had been intended that the Minister should have the right of private suppression of a charter, the Legislature would have expressly so provided.

Section 1441 provides for annual reports by corporations to the Minister of the Interior, and for examinations under oath, and then says: "The annual reports above mentioned, and the results of such examination, the Minister may, *in his discretion*, lay before the King in Privy Council, and also publish."

Had the Legislature intended that the Minister should have a discretion about laying before the King in Privy Council the original petition for a charter, they would have made a provision for it similar to the one just quoted.

Defendant's counsel refer to Section 1443, as illustrating their definition of a relative discretion.

This Section says: "The Minister of the Interior, with the consent of the King in Privy Council, shall also have power, on the expiration of any charter, to renew the same, on application to him for that purpose by two-thirds of the stockholders of such company, and a satisfactory explanation to him of the state of its affairs."

The defendant's counsel say, that upon a satisfactory showing

of the company's affairs, "the power of discretion of acting, refusing or granting ceases upon such a showing being made, and the duty becomes imperative."

We think this is so, if the "King in Privy Council consent," otherwise not, and the King in Privy Council *may refuse*. It is no more a case of relative discretion than Sec. 1442. And the defendant's counsel do not pretend that the Minister can escape the duty of presenting the application for renewal to the King in Privy Council; and yet there is no direct provision that he shall present it. If the Minister does not wish to renew the charter, why not suppress it, as it is said he may the original charter by Sec. 1442.

The counsel for the defendant say: "Again, suppose the application be for a charter for illegal or seditious purposes, the Minister would reject it immediately"; and they say "this is an exercise of discretion." The answer to this is that if such were the nature of the petition, it would manifestly be a petition not in compliance with the law. It would be rejected because not formally in accordance with Sections 1442 and 1445 of the Statute. The examination of an application to see whether it is formal is not an exercise of discretion. There are no two ways of deciding that question, and its decision is the mere exercise of a clerical duty.

When it is found to be formal, thereafter, at the time the Statute prescribes, the right to exercise discretion arises.

Sec. 1445 prescribes a form of petition, and it is upon such a petition and no other that the discretion to grant or reject is to be exercised.

See *Bailey vs. Ewart*, 52 Iowa, 111, 112; *Howland vs. Eldredge*, 43 N. Y., 357; *San Francisco Gas Company vs. Supervisors*, 11 Cal., 42; *Carpenter vs. County Commissioners*, 21 Pick., 258.

The manifest intention of the Legislature was to refer the important matter of granting or refusing a charter to the King in Privy Council, where he has the aid not only of the Council, but of his entire Cabinet (including the Minister of the Interior) who are *ex officio* members of that council. Any other construction of the law would make of His Majesty a cipher, instead of treating him, as the Constitution declares, as the executive power of the Government.

The view that after the matter reaches the King in Privy Council, the Minister has no separate discretion, is in accord with the argument of the defendant's counsel.

We have examined many of the cases cited by the defendant's counsel defining and describing what is meant by discretion. We have found none which show the act commanded here to be an act resting in the Minister's discretion.

In the case of *Castle et al. vs. Kapena*, Minister of Finance, *ante*, page 27, we have held that a mandamus may issue against a Cabinet Minister. Upon the questions not considered herein, and upon the whole case, we refer to and adopt the opinion of the Court below.

The judgment is affirmed with costs.

DISSENTING OPINION OF CHIEF JUSTICE JUDD.

I think the law ought to be as laid down by my learned associates. It should not be in the power of one man to prevent at his caprice the incorporating of business enterprises. But the words of the statute seem to me to confer this power on the Minister of Interior. I think they give the Minister the authority to use his discretion in refusing to grant a charter, and this implies that he may refuse to present the application for the consideration of His Majesty in Privy Council. For it would be presumptuous in him and disrespectful to His Majesty to exercise this discretion and refuse to issue a charter *after* His Majesty in Privy Council had authorized him to issue it. His discretion must be exercised, if at all, before the application goes to the Privy Council. The question is not without doubt, and I am much impressed with the reasoning of the decision of the majority of the court, but it seems to me that the interpretation therein put upon the Statute has the effect of altogether striking therefrom the words "in his discretion."

As to the amenability of a Cabinet Minister of this Kingdom to the Writ of Mandamus, to compel the execution of a duty not discretionary, I fully agree with my brethren.

But as I think the Minister has a discretion vested in him by the Statute, I am obliged to dissent.

*A. S. Hartwell* and *Smith & Thurston*, for Petitioners.

*Attorney-General Neumann* and *W. A. Whiting*, for Respondent.

Honolulu, February 21, 1884.

### Opinion of the Court Below by Austin, J.

This case arises on a return to an order, issued on the plaintiffs' sworn petition, to show cause why a writ of mandamus should not issue to the defendant, requiring him to present to the King in Privy Council the plaintiffs' petition for a charter of incorporation.

The return consists of a demurrer based upon three grounds. The first ground is technical, and I shall now consider it. It is alleged that the petition fails to show a demand and refusal by the defendant to do the act required of him, and the defendant's counsel claims that this is fatal to the demand for a mandamus. I, have no doubt, after examining the authorities cited by the counsel on both sides, that a substantial demand and refusal must be shown.

See Tapping on Mandamus, pp. 332 to 336, and the authorities cited.

As to the point that a demand should be shown, the petition alleges that the plaintiffs, in April, 1883, filed in the office of the Minister of the Department of the Interior a petition praying for a charter of incorporation to be issued to the plaintiffs, and that they might be constituted a body corporate under the corporate name of the Hawaiian Gazette Company; and also filed the several certificates as required by the statutes thereto appertaining, together with the form of a charter desired by the plaintiffs. Had the petition alleged in addition that the petition praying for a charter, had been presented to the defendant personally, the allegation of a demand would have been surely complete.

In this case was not the filing of the petition in the defendant's department equivalent to a personal demand, unless the defendant answers that he never saw or heard of it?

This branch of the demurrer rests upon the idea that upon demand it would be the duty of the defendant to present the petition for a charter. I am inclined to believe that the filing such petition in the defendant's office as Minister of the department was a demand that it be presented, sufficient to call upon the defendant to act. I think the defendant may be presumed to have personal knowledge of such a petition filed in his department office.

High on Extraordinary Remedies, Sec. 41, says: It has been held that " Where the duty is plain and specific relating to an act which the law requires of public officers, no demand is necessary."

If I should hold on the merits that it is the public duty of the defendant to present petitions for charters to the King in Privy Council, then the filing of a proper petition as alleged, I think, would impose the duty of presentation upon the defendant. As to the point that there should be a refusal shown, the allegation is that more than sufficient time has elapsed wherein to enable the defendant to present said petition, that numerous meetings of the Privy Council have been held since the filing of said petition, but the defendant has " utterly failed and refused, and now fails and refuses to present said petition to the King in Privy Council."

This is direct as to refusal.

Tapping on Mandamus, pp. 334–5, says: " There should be enough from the whole of the facts to show to the Court that for some improper reason compliance is withheld and a distinct determination not to do what is required."

These allegations show that, provided the duty of presentation rested upon the defendant at all.

Further: the allegation of refusal is of a refusal to present the petition described, which in itself was a direct prayer to the defendant to issue the charter sought. He could not refuse to present it without knowing its contents, and if he knew them and refused, I think the demand and refusal complete.

If the petition is true, there can be no question that the defendant, with perfect knowledge of the prayer for a charter, refused to present it to the King in Privy Council. I hold that this is sufficient under the authorities cited.

See *King vs. Canal Company*, 3 *Ad. & Ell.*, 217. High on Extraordinary Legal Remedies, Sec. 13. *O. and V. R. R. Company vs. Plumas County*, 37 *Cal.*, 354.

I shall now consider the second and third grounds of the demurrer, which are on the merits.

These grounds are in substance that the Court cannot grant a mandamus because there is no law or statute, as claimed, which requires the defendant to present the prayer for a charter to the King in Privy Council, and that whether such prayer shall be so

presented rests in the judgment and discretion of the defendant, and this Court cannot command him to present it.

The authorities are ample to show, and it is conceded by the plaintiffs' counsel, that if the act of presentation asked is a matter vested by law in the judgment and discretion of the defendant, the writ of mandamus cannot be issued.

In one branch of the argument of the counsel for the defendant they claim, though inconsistent with other parts of it, that it is doubtful whether the Court has the power to issue a mandamus against the defendant at all, because he is the head of a Government department. Though formerly a prerogative writ and not one of strict right in England, yet practically now even there the issuing of it is a matter of strict right based upon well-settled principles of law, which are not departed from, and in the United States the writ has always been one of strict right. In this country, which, like the United States and unlike England, has a written constitution which governs King and people, the issuing of the writ is matter of strict right upon fixed rules of law.

In England it has been held that no writ of mandamus could be issued by any court against the King or Queen.

In the case of the *State of Mississippi vs. Johnson*, in the United States Supreme Court, where an injunction was sought against the President of the United States to restrain him from carrying out certain laws claimed to be unconstitutional (4 Wall., 98), Chief Justice Chase said : "We shall limit our inquiry to the question presented by the objection (that the duty involved is matter of discretion), without expressing any opinion on the broader issues discussed in argument, whether in any case the President of the United States may be required by the process of this Court to perform a purely ministerial act under a positive law, or may be held amenable otherwise than by impeachment for crime."

In this country I think if an injunction or a mandamus were asked against His Majesty, that it ought probably to be denied.

It is stated by High, in his work on Extraordinary Legal Remedies, Sec. 119, that in the States of Ohio, Alabama, California, Maryland and North Carolina, the courts of last resort have held that mandamus will lie to compel the performance of ministerial duties by the Governor of the State. The opinions quoted from to sustain this view seem to be based on sound principles.

However, High, in Sec. 120, says that the courts of Arkansas, Georgia, Illinois, Louisiana, Maine, Minnesota, New Jersey and Rhode Island, have held that no mandamus could issue against the Governor of a State in any case.

The question, therefore, of the amenability of the supreme head of a State or country to the law of mandamus is strongly mooted and must be considered in doubt.

But that is not the question here; and in many cases, and almost or quite universally, it is held, both in England and America, that a head of department, including the Secretary of State, the Secretary of the Treasury, the Secretary of the Interior and the Secretary of the Navy, in the United States, can be compelled by mandamus to perform purely ministerial acts enjoined upon him by law.

In the case of *Marbury vs. Madison*, 1 Cranch, 137, decided in February, 1803, Chief Justice Marshall said: "It is not by the office of the person to whom the writ is directed, but the nature of the thing to be done, that the propriety or impropriety of issuing a mandamus is to be determined."

In these clear words he struck the keynote of all that has been decided since on this point by the Supreme Court of the United States, and in that case it was held that James Madison, the Secretary of State, should deliver to William Marbury his commission as a Justice of the Peace of the County of Washington, in the District of Columbia, to which he was entitled by law, and which, being in the custody of the Secretary, he was bound to deliver in the exercise of a purely ministerial duty.

The question then is, and the counsel for the defendant having seemingly denied, at last admits it, whether the act required by the plaintiffs of the defendant in this case is a purely ministerial act which the law requires him to perform, or an act resting in his judgment and discretion, and it is admitted that if the act required is ministerial, a mandamus must issue.

I shall now address myself to this question. It has been well and fully argued by the counsel on both sides, and the law cited is amply sufficient to furnish a basis for its decision.

Article 13 of the Constitution provides as follows:

"The King conducts His Government for the common good,

10

and not for the profit, honor or private interest of any one man, family or class of men among His subjects."

Article 14 provides:

"Each member of society has a right to be protected in the enjoyment of his life, liberty and property according to law."

Sec. 34 of the Civil Code provides that "it shall be the duty of the Minister of the Interior to faithfully and impartially execute the duties assigned by law to his department."

Sec. 1442 of the Civil Code is as follows: "The Minister of the Interior shall have full power, subject to the provisions and conditions of this chapter, in his discretion, by and with the advice and consent of the King in Privy Council, to grant charters of incorporation for agricultural, commercial and manufacturing purposes, and for cemetery associations, as well as to charter other incorporations, either aggregate or sole, ecclesiastical or lay, banking and municipal corporations alone excepted, which shall be chartered only by the Legislature."

These are all the statutes which directly relate to the question at issue.

It is claimed that by the latter section the defendant has a discretion as to whether or not he will present a prayer for a charter to the King in Privy Council. Inasmuch as the section does not so say, I am unable to believe that it can be so construed.

The only discretion of which the section speaks is a discretion to be exercised *by and with the advice and consent of the King in Privy Council.* Until he has placed himself in a position to receive that advice and consent, under the section, he can exercise no discretion. If, then, he rejects the petition and declines to grant the charter, or if he grants it without presentation, he has of his own motion, without the King's advice and consent, as required by the statute, assumed to exercise a discretion which he does not possess.

There is no escape from this conclusion. If there is, then the King's Minister of the Interior might suppress, as in the case at bar, without informing His Majesty, every prayer for a charter which should be presented by his people, and the statute relative to corporations would become utterly useless; or, if operative, it would be practically to strike out from the King's constitution

that golden Section 13, which I have quoted, and the granting of which by his just predecessor covers him with honor.

The law is no respecter of persons. I have no doubt, as a member of His Majesty's highest Court, that he has every disposition fairly and impartially to carry out the law.

Without the examination of authorities I have no doubt, upon plain reason, under the sections of the Code referred to, and in accordance with the provisions of the Constitution, that the Minister of the Interior, on the filing of a prayer for a charter, is bound to put himself in the position to exercise the discretion to grant or refuse it, and this he can only do by presenting it to the King in Privy Council.

But the authorities are abundant to show that an officer who has a discretion may be compelled to exercise that discretion as the law requires, and that is all that the plaintiffs ask in this case.

Tapping, on Mandamus, says, side page 14: "So, where one is to act according to his discretion, and he will not act nor even consider the matter, the Court will by mandamus command him to put himself in motion to do it."

Many English authorities are referred to. The principle is well settled and unquestioned.

See also side page 117; and *Bailey vs. Ewart*, 52 Iowa, 112; *Howland vs. Eldredge*, 43 N. Y., 457; *San Francisco Gas Company vs. Supervisors*, 11 Cal., 42; *Carpenter vs. Commissioners of Bristol*, 21 Pick., 258.

The case of *Ludington vs. The Minister of the Interior* (in 1867, not reported) was cited by the defense, and I have examined it. It in no way conflicts with the views I have taken herein.

The right of prayer for a charter in accordance with a law duly enacted is a valuable right, concerning property.

It is secured to the plaintiffs by Section 14 of the Constitution, which I have quoted.

This right has been substantially denied to them by the defendant, and for its enforcement they have no other remedy than that sought in this case.

Let a mandamus issue to the defendant in accordance with the prayer of the petition.

Dated December 14, 1883.