not exceeding $50 for eacn indigent child chargeable to the county placed in a suitable home, found by Maybee. Under his authority, he could have expended this sum for each child and have a legal claim against the county for reimbursement. This was, in effect, what was done. The arrangement between him and Maybee was substantially the same as if the relator had paid Maybee and had presented a claim in his own name to the board of supervisors for reimbursement. That could not fall under the condemnation of being against public policy. The formal assignment to him of Maybee's claim did not put him in any different relation to the county than he would have occupied if he had paid Maybee for his services and presented his claim, under the resolution, to the board of supervisors for expenses. It was a matter of form, rather than of substance, and does not bring him within any principle of law prohibiting his recovery against the county.

I am of opinion that the order and judgment appealed from should be reversed, and the relator's motion for a peremptory writ of mandamus should be granted, requiring the board of supervisors to reconvene and to audit and allow the claims at such sums as are proper.

Judgment and order reversed on the law and facts, with $10 costs and disbursements, and motion for writ of peremptory mandamus granted, with $50 costs. All concur.

---

OSWEGO COUNTY SAV. BANK v. TOWN OF GENOA.

(Supreme Court, Appellate Division, Fourth Department. November 19, 1901.)

1. RAILROADS—MUNICIPAL BONDS—EXTENSION OF LINE—CONDITION PRECEDENT.
Laws 1867, c. 917, authorized the New York & Oswego Midland Railroad Company to construct a branch to A., in C. county, and the towns along the branch were authorized to issue bonds. Laws 1871, c. 298, authorized a further extension from A. easterly or southerly "upon such route and location and through such counties" as the board of directors should deem most favorable, to a point on Lake E. or the N. river, and towns on or near such extension were authorized to issue bonds. In 1869 the road began to construct the A. Branch, but it never reached C. county. After the act of 1871 was passed, a contract was made between the road and an individual for the purchase of a partially graded roadbed running through C. county, but the purchase was never consummated. Bonds were then issued by defendant town, located in C. county. Prior to such issue the road by resolution determined to construct an extension under the act of 1871, which it did, the extension commencing at the terminus of the A. Branch, and passing through C. county and defendant town, but the further route and the terminus were never located. Held, that the bonds were not issued under the act of 1867, but under that of 1871, under which it was a condition precedent to their issue that the entire route and terminus of the proposed extension should have been located.

2. SAME—DEFECTIVE ISSUE—CURE BY STATUTE.
Acts of the legislature passed prior to the commencement of proceedings for the issuance of the bonds could not cure the defect in such issuance arising from the fact that the route and terminus of the proposed extension had not been located.

8. SAME—CURE BY LEGISLATURE.
Laws 1873, c. 548, relating to the issue of bonds in aid of the railroad, expressly provided that it should not in any way affect any suit there-

after brought to test the bonding of any town in C. county in aid of such road, its branches or extensions. *Held,* that it could have no curative effect upon the defect in the issue of the bonds.

**4. SAME—BONA FIDE HOLDER.**

The bonds being invalid from lack of authority in the town to issue them, no one could become a bona fide holder thereof.

**5. SAME—RATIFICATION.**

The town could not, by any subsequent acts of its officers or otherwise, ratify the bonds issued, or estop itself from questioning their validity.

Appeal from special term, Onondaga county.

Action by the Oswego County Savings Bank against the town of Genoa. From a judgment of the supreme court, entered after trial at the special term, in favor of the defendant (59 N. Y. Supp. 829), plaintiff appeals. Affirmed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, and WILLIAMS, JJ.

S. M. Coon and I. T. Deyo, for appellant.

Frederick E. Storke, for respondent.

WILLIAMS, J. The judgment appealed from should be affirmed, with costs. The action was brought to recover the amount of certain coupons upon bonds issued by the defendant in aid of the New York & Oswego Midland Railroad. The defenses urged were that the bonds were invalid and uncollectible, because: (1) The necessary consents of the taxpayers were not obtained. (2) The acts of the legislature under which the bonds were issued were unconstitutional, in that they were private bills, and embodied more than one subject. (3) The railroad did not determine to build and did not locate the line in aid of which the bonds were issued, and this was a condition precedent to the issue of the bonds. The court decided the first question, as to the consents of taxpayers, in favor of the plaintiff, declined to pass upon the second question, the constitutionality of the acts, and determined the third question in favor of the defendant, holding that the railroad did not determine to build and did not locate the line, and therefore the bonds were invalid.

The New York & Oswego Midland Railroad Company was incorporated January 11, 1866, under the general railroad law of this state (chapter 140, Laws 1850), for the purpose of constructing and operating a line from Oswego southerly and easterly to a point on the Hudson river opposite New York City. The main line was located along a route 35 miles east of Cayuga county, and 45 miles east of the defendant, a town in said county, and was being constructed during the years 1866 to 1873, both inclusive. In 1867 the legislature, by chapter 917 of the Laws of that year (commonly known as the "Auburn Branch Act"), authorized the Midland Company to construct a branch road from its main line to the city of Auburn, in Cayuga county; and the towns along the branch line, or interested in the construction of the same, were given power to issue bonds in aid of such construction. In June, 1869, the railroad company began the construction of this branch from Norwich, Chenango county, on its main line. This branch was constructed through Madison county to

the village of Cortland, in Cortland county, during the years 1869, 1870, 1871, 1872, and was opened for traffic to Cortland June 5, 1872. In June, 1871, there was a contract made between the railroad company and one Wood, having in view the purchase of the "Murdock Line," so called, a partially graded roadbed from Pugslys', near Ithaca, northerly through Tompkins and Cayuga counties to the Merrifield road in the town of Scipio, in the latter county, 11 miles south of Auburn, for the use of the railroad in constructing a part of the Auburn Branch; but nothing came of this contract, the conditions as to raising money by the city of Auburn and some of the towns never having been complied with. After the making of this contract, consents of taxpayers of the defendant town were obtained, dated June 20, 1871, and were filed August 28, 1871; and September 9, 1871, the county judge of Cayuga county appointed Hewit, Stevens, and Lester railroad commissioners of the town, and they thereafter issued the bonds in question, dated December, 1871, aggregating $75,000. In the meantime, and April 5, 1871, the legislature passed another act (chapter 298 of the Laws of that year, commonly known as the "Westerly Extension Act"), authorizing the railroad company to extend and construct its line from the city of Auburn or from any point upon said road easterly or southerly from said city upon a route deemed most feasible to a point on Lake Erie or Niagara river, and on November 16, 1871, the railroad, under this act, by resolution, determined to commence the extension and construction westerly at and from the village of Cortland, and extend it westerly to Lake Erie or the Niagara river. Pursuant to this resolution, and under this "Western Extension Act," the railroad company in December, 1871, began to construct its Westerly Extension, commencing at Freeville, Tompkins county, and going westerly and northerly through that county and into Cayuga county, striking the Murdock line at Asmuns, Tompkins county, and thence going northerly along that line. During the winter of 1871 and the following year the road was constructed as far as the village of Geneva, in defendant's town, in October, 1872, and as far as the Merrifield road in December, 1872. A traffic contract was made March 22, 1872, between the Midland Company and the Utica, Ithaca & Elmira Company under which the Midland Company was authorized to use the tracks of the other company between Cortland and Freeville for the purpose of making a continuous connecting line between Norwich and the line north of Freeville, which later in the year extended to the Merrifield road 11 miles south of Auburn; and in December, 1872, the Midland road began to run its trains between its main line at Norwich and the Merrifield road, and continued so to operate the road until the fall of 1873, when the company failed, and a receiver was appointed.

It seems to us quite apparent that the railroad company never decided upon or located any route for the Auburn Branch in or through Cayuga county under the act of 1867, and that from and after November 1, 1871, they acted solely under the "Western Extension Act," passed in April of that year. Nothing had then been done towards constructing the Auburn Branch line west of Cortland, and

they elected then to commence the Westerly Extension, not at Auburn, but at Cortland, which was easterly and southerly of Auburn. Auburn would not issue bonds in aid of the Auburn Branch line, and therefore, apparently, the railroad abandoned Auburn, and started from Cortland, under the western extension act; and this was before the bonds in question were issued at all,—before their date even. The road was never constructed westerly of the Merrifield road, nor was any location made of the line beyond that point, other than by a map and profile filed in the Cayuga county clerk's office August 29, 1873, which showed a line from the Merrifield road to Mudlock, a point near the west line of Cayuga county, which was called a part of the Westerly Extension, and passed south and west of Auburn some eight miles from the city. The western terminus on the lake or river was never selected nor decided on, nor was the route to such terminus from Mudlock west ever fixed or designated in any way. No railroad was ever constructed between Cortland and Freeville. The railroad company never determined to build and never did construct any road from the Merrifield road to Auburn. They were waiting for Auburn to raise money, which it never did. The road between Freeville and Scipio fell into the hands of the Ithaca, Auburn & Western Railroad Company, which later extended the line from the Merrifield road to Auburn, and it was operated between Freeville and Auburn until 1890, when it was abandoned, its rails taken up, and it has not since been operated. The bonds in question, upon being issued, were delivered to the railroad company, or were sold to others at various times between March 1st and December, 1872, and the proceeds applied to the payment for the stock of the railroad company subscribed for by the railroad commissioners. A certificate for the stock was issued to the railroad commissioners November 20, 1872. The railroad commissioners of the town paid the interest coupons upon the bonds to and including September 1, 1887, from moneys raised by tax upon the town as provided by law. None of the interest coupons of a later date have been paid. The coupons were paid promptly as they matured, except those for 1875 and 1876, which were not paid until the money therefor was raised by taxation in 1876. The money to pay the coupons for 1888 was raised by taxation in 1887, and paid to the railroad commissioners, but those coupons have not been paid by the commissioners.

It is not necessary further to recite the facts in detail. The court held and decided, among other things, that the location of the route and terminus of the line in aid of which the bonds were issued was a condition precedent to the exercise of the power to issue the bonds, that the bonds were not issued in aid of the Auburn Branch line under the act of 1867, but of the Western Extension, under the act of 1871, and neither the terminus nor the route from Mudlock west was ever located. Therefore there was no authority to issue the bonds, and they were invalid, and cannot be enforced. There was abundant evidence to support the findings of fact made by the court. We cannot interfere with such findings. They were correct. As to the law, we must conclude that the bonds were issued without authority of law, under the principles laid down in People v. Morgan,

55 N. Y. 587; Purdy v. Town of Lansing, 128 U. S. 557, 9 Sup. Ct. 172, 32 L. Ed. 531, and cases therein referred to. In these cases it was clearly held that, in order to authorize the issue of bonds under this act of 1871, the "Western Extension Act," the railroad must, before such issue, have designated or located the entire route of the extension. In order, therefore, to avoid the remaining proposition of law that the bonds were illegal, and cannot be enforced, the plaintiff must maintain one of its contentions: (1) That any defects in the proceedings for and the issue of the bonds have been validated by subsequent legislation, or (2) that the defendant, by its subsequent acts, has ratified the issue of the bonds, and is estopped from questioning their validity in the hands of bona fide holders.

1. We are aware of no legislation tending to cure the defect here complained of that the route and terminus of the "Westerly Extension," in aid of which the bonds were issued, were never located or determined upon. The proceedings for the issue of the bonds were commenced by the appointment of the railroad commissioners September 9, 1871. Until then this defect did not exist, and therefore the acts passed in 1866, 1868, and 1869 could have no curative effect as to this defect. The only other act referred to is chapter 548 of the Laws of 1873, and that act expressly provided that it should not in any wise affect any suit thereafter brought to test the bonding of any town in Cayuga county in aid of the Midland road, its branches or extensions. It could, therefore, have had no curative effect upon the defect complained of here.

2. The plaintiff cannot be a bona fide holder of the bonds in question. Cagwin v. Town of Hancock, 84 N. Y. 532–542, and cases cited. It was said in that case:

"There can be no bona fide holders of bonds within the meaning of the law applicable to negotiable paper which have been issued without authority. A town has no general authority to issue such bonds. It can issue them only by virtue of special authority conferred by some statute. Unless issued in the way pointed out by statute, they cannot bind the town. The statute specifies the power of the agents of the town, and the precise conditions upon which the bonds could be issued; and all persons taking the bonds are chargeable with knowledge of the statute, and they must see to it that the statute has been complied with before they can with absolute safety take the bonds. Such is the law as laid down in this state."

The defendant could not, by any subsequent acts of its officers or otherwise, ratify the issue of the bonds, or estop itself from questioning their validity. Calhoun v. Millard, 121 N. Y. 69, 81, 24 N. E. 27, 8 L. R A. 248, and cases cited. In this case it was said:

"Municipal corporations, since they possess no general authority to issue such bonds, cannot, by recognition or subsequent ratification, validate obligations which they had no power to create."

We are unable to see how the plaintiff can avoid the conclusion of law found by the trial court that the bonds in question are illegal, and cannot be enforced. Our conclusion is that no error was committed by the trial court in the disposition of the case upon the grounds it was placed, and that the judgment appealed from should be affirmed, with costs. All concur, except McLENNAN, J., not voting.