The Town of Venice v. Breed.

———————

THE TOWN OF VENICE, appellant, v. BREED, executor, etc., *et al.*

*Railway aid bonds — non-compliance with statute — statute of limitations — counter-claim — conflict of law.*

By chapter 375, Laws of 1852, it was provided, that designated commissioners, in any town in Cayuga county, might, upon a compliance being had with the provisions of the act, raise money upon the credit of the town in aid of a certain railroad. In the act it was provided that the money should be raised on the bonds, and paid to the president and directors of the railroad company, organized under the general law, designated by the written consent of two-thirds of the tax payers of the town, etc. It was also provided among other things, that unless the written consent of the required number of tax payers was filed in the county clerk's office, the commissioners should

The Town of Venice v. Breed.

have no power to do the acts authorized by the statute. Under this statute, commissioners of the town of Venice issued twenty-five town bonds of $1,000 each. Five of these bonds were sold for cash, and the money paid to a railroad company. The remainder of them were delivered to the company in payment of stock taken by the town, and by such company sold to purchasers.

In an action by the town to compel holders of the bonds to surrender such bonds for cancellation:

*Held* (following *Starin* v. *Town of Genoa*, 23 N. Y. 439), that a want of consent of two-thirds of the tax payers rendered the bonds issued void; that the transfer of bonds directly to the railroad company, in payment of stock, was a misappropriation, rendering void the bonds transferred, and that the affidavits of the commissioners were not competent evidence, that the requisite number of tax payers had given consent.

*Held,* also (TALCOTT, J., *contra*), that the plaintiff was not bound to return the stock purchased by it to enable it to maintain the action for cancellation of the bonds.

The different holders of the bonds sought to be canceled could be joined as defendants (34 N. Y. 30).

Several of the defendants set up statutes of limitation. *Held,* that the right of action accrued when the bonds were transferred, and, as to defendants setting up the statute of six and ten years, the right of action was barred.

One of the defendants set up as counter-claim indebtedness of the plaintiff for money borrowed. *Held* not allowable.

This court is bound by, and will enforce, the law as the court of appeals declares it, notwithstanding the decision of the United States supreme court, except in the particular case upon which the federal tribunal has rendered its decision.

APPEAL from a judgment on the report of a referee.

The action was brought to compel the surrender and cancellation of certain bonds purporting to be issued by the plaintiff to aid in the construction of a railroad from Lake Ontario to the New York and Erie or Cayuga and Susquehanna railroad, pursuant to act of the legislature of this State, passed April 16, 1852, entitled "An act to authorize any town in the county of Cayuga to borrow money for aiding in the construction of a railroad from Lake Ontario to the New York and Erie or Cayuga and Susquehanna railroad." Chapter 375 of Laws of 1852.

By that act it was provided that the supervisor of any town of said county, together with the assessors, should be commissioners to borrow, on the credit of the town, a sum not exceeding $25,000 for a term not exceeding twenty years, and to make and deliver bonds for the same. The money so raised was required to be paid over to

the president and directors of such railroad company, organized under the general railroad law, as might be designated by the written consent of two-thirds of the resident tax payers of the town, to be expended in grading, etc., a railroad or railroads passing through the city of Auburn and connecting Lake Ontario with the Susque-. hanna and Cayuga or the New York and Erie railroad. It was expressly provided in and by said act, that the commissioners should have no power to do the acts authorized thereby until a railroad company had been organized under the general law, and the written consent of two-thirds of the tax payers of the town, whose names appeared on the last assessment roll of the town preceding the borrowing of the money obtained, and filed in the clerk's office of Cayuga county, together with an affidavit of the supervisor and commissioners, or any two of them, attached to such statement, that the persons whose written assents were thereto attached and filed comprised two-thirds of all the resident tax payers of said town on its assessment roll next previous thereto.

The act further provided, that on filing such consent and affidavit, the commissioners might subscribe and. pay for stock in such company to the amount of money so borrowed.

It was further provided, that the commissioners appointed by the act should hold office until the next town meeting, when two commissioners should be elected to act with the supervisor, and the acts of a majority should be valid and binding.

A railroad company was organized to construct a road from Lake Ontario to the Susquehanna railroad, through the city of Auburn.

The commissioners issued bonds to the amount of $25,000, payable in twenty years, and attached thereto interest coupons.

The commissioners subscribed for the stock of said railroad to the amount of.$25,000.

The directors called for payments upon said stock, and the commissioners sold to Amos Hutchinson three of said bonds, numbered 1, 2, 3, and received from him $3,000, which they paid over to the treasurer of the railroad company to apply in payment of said stock. About the same time, said commissioners sold and delivered to defendant, Lyman Murdock, two others of said bonds, and received from him $2,000, which they paid to the treasurer to apply on the stock.

On the 11th of October, 1853, the commissioners sold and transferred directly to the railroad company nineteen of the said bonds,

The Town of Venice v. Breed.

and on the 1st of November, 1853, one other bond, making, in all, twenty of said bonds to the railroad company in payment of the amount remaining due on said stock.

The railroad company delivered to said commissioners, for the benefit of said town, scrip for said stock, which scrip has never been surrendered to said company.

The town paid for some three or four years the interest on the bonds issued in payment for said stock, and then refused to pay any thing more, on the ground that the bonds were issued in violation of the statute and were not binding on said town.

The moneys paid by Hutchinson and Murdock for the bonds transferred to them have not been repaid.

Those who purchased the twenty bonds of the railroad company did not know, when they made the purchase, that they had been delivered directly to the railroad company by the commissioners.

The consent in writing of two-thirds of the resident tax payers had not been obtained before the making and delivery of said bonds, nor at any time since.

The referee to whom the issues in the cause were referred, found the foregoing facts, and ordered judgment dismissing the complaint, with costs, and from the judgment so entered the plaintiff appeals.

*D. Pratt,* for appellant.

*D. Wright,* for respondents, cited *Smith* v. *Clark,* 4 Paige, 368; *Jacks* v. *Nichols,* 5 N. Y. 178; *People ex rel. Fiedler* v. *Mead et al.,* 24 id. 114; *Gillian* v. *Norton,* 33 How. Pr. 373; *N. Y. & N. H. R. R. Co.* v. *Schuyler,* 34 N. Y. 30; *Farmers & Mechanics' Bank* v. *Butchers & Drovers' Bank,* 16 id. 125, 142; *Griswold* v. *Haven,* 25 id. 595; *Williams* v. *Village of Dunkirk,* 3 Lans. 51; Ang. & Ames on Corp., §§ 310, 311; Code, § 91, subd. 6; *Erickson* v. *Quinn,* 3 Lans. 299–330; *Moore* v. *Greene,* 19 How. (U. S.) 72; *Bertine* v. *Variam,* 1 Edw. Ch. 347; Code, § 97; *Bruce* v. *Tilson,* 25 N. Y. 194; *Hubbell* v. *Sibley,* 5 Lans. 51; *Rogers* v. *Burlington,* 3 Wall. 666; Sto. Eq. Jur., § 695, etc.; *Mechanics' Banking Association* v. *New York & Saugerties White Lead Co.,* 35 N. Y. 505; *Bank of New York* v. *Bank of Ohio,* 29 id. 619; *Bank of Genesee* v. *Patchin Bank,* 19 id. 312; *Otter* v. *Brevoort Petroleum Co.,* 36 How. Pr. 330; *East N. Y. & J. R. R. Co.* v. *Lighthall,* 5 Abb. Pr. N. S. 458; *Hope Mutual Life Ins. Co.* v. *Taylor,* 2 Rob. 278.

*George Bullard,* for respondent Breed, cited Laws of 1852, ch. 375, §§ 1–10; Story on Agency, § 250; *Bennett* v. *Judson,* 21 N. Y. 238; Code, § 168; *Barton* v. *Butts,* 32 How. Pr. 456; Will. Eq. 46; *Rogers* v. *Rathbun,* 1 Johns. Ch. 367.

MULLIN, P. J.    In the case of *Starin* v. *The Town of Genoa,* 23 N. Y. 439, the court of appeals decided that the bonds in question in this suit, having been issued without the consent of two-thirds of the tax payers of the town having been obtained, were void.

That court also decided that such of the bonds as were sold to the railroad company in payment for the stock of said company, subscribed for by the commissioners of said town, were void because such an appropriation of the bonds was unauthorized by the statute.

It was also decided that the affidavit filed by the commissioners, that the consent of two-thirds of the tax payers of the town had been procured, was not competent evidence of that fact, and the town, as the representative of the tax payers, was not estopped from insisting that the consent of the requisite number of tax payers had not been obtained.

In this case twenty of the bonds were sold to the railroad company and purchased by some of the defendants of the company; as to these bonds, therefore, the case of *Starin* v. *The Town of Genoa* is directly in point, and establishes conclusively the invalidity of that portion of the bonds.

It is insisted that the five bonds purchased of the commissioners, and paid for in cash, are valid, because the purchasers were purchasers in good faith for value, and without notice.

This proposition was decided against the defendants in *Gould* v. *The Town of Sterling,* 17 N. Y. 492. It was there held that the failure to obtain the consent of the requisite number of tax payers was fatal to the power to issue the bonds. That persons dealing with the bonds were bound to inquire for themselves whether the conditions precedent to the issue of them had been complied with, and that they could not be deemed *bona fide* purchasers without notice of the defects in the bonds.

Some of the defendants set up, by way of defense, that they purchased the bonds held by them without notice that they had been sold by the commissioners to the railroad company, and that they are, for that reason, *bona fide* holders of said bonds.

This cannot be true so long as all persons dealing with the bonds

are charged with notice that they were issued without the consent of the requisite number of tax payers being obtained. It is said by the defendant's counsel that the want of notice of any defect in the bonds of good faith in the purchase, being set up in the answer, and in response to the allegations in the complaint, and no proof being given on the subject, it must be taken as true, and the defendants thus circumstanced must be treated as *bona fide* holders without notice. This rule of equity pleading cannot be applied under the Code. The allegations of the answer are to be treated either as a denial of the allegations of the complaint, or as matter of affirmative defense. If the allegation in the complaint is not proved, the defendants gets the benefit of the denial by forcing the plaintiff to attempt proof of the fact alleged; and, if it is not made, the defendant has the right to claim that his allegation is established.

Where the answer sets up matter, by way of affirmative defense, he must prove it, or he gets no benefit from it.

It is said that the court of appeals, in *Starin* v. *The Town of Genoa*, based its decision, that the plaintiff in that case was not a *bona fide* holder, on the ground that he purchased the bonds of the railroad company at a discount. This is a mistake.

Purchasing at a discount is not alluded to in the opinion in the case of *Starin* v. *The Town of Genoa*. It is said that the railroad company was chargeable with notice of the invalidity of the bonds, and the plaintiff having purchased of that company with full notice of the facts and circumstances under which they had been received, was not, for that reason, a *bona fide* holder.

I do not find that it was suggested in the opinion in *Gould* v. *The Town of Sterling*, that the title of the plaintiff was held defective because of the purchase of the bonds for less than their par value.

In both cases they were held void, because of the failure to comply with the statute.

One of the principal grounds relied on to defeat a recovery by the plaintiff is, that the defendants have no joint interest in the bonds and cannot, for that reason, be joined.

This position was put forward in the case of *The New York & New Haven Railroad Co.* v. *Schuyler*, 34 N. Y. 30, but the court overruled it and held, that those holding the stock fraudulently

issued by Schuyler could be joined in a single action, and the validity of the stock held by them severally determined.

When this case was before the general term of the fifth district, on appeal from an order dissolving the injunction issued therein, the point was then taken that a court of equity had no power to compel the cancellation and surrender of the bonds held by the defendants, but it was held that a court of equity had such power, the order dissolving the injunction was reversed upon that ground, with others. Story's Eq. Juris., §§ 692, 700; *Field* v. *Holbrook,* 6 Duer, 597; *Hamilton* v. *Cummings,* 1 Johns. Ch. 517; *Johnson* v. *Stevens,* 13 How. Pr. 132.

The omission of the plaintiff to return or offer to return the stock to the railroad company, is relied upon as defense to the plaintiff's action.

. I am unable to perceive what the defendants have to do with that question. They have no interest in the stock nor right to demand a return of it, nor to ask any relief founded on its non-return.

Should the company be compelled to pay back to the defendants the money received of them for the stock, it will then doubtless call on the plaintiff to account for the stock. The defendants, however, are clothed with none of the rights of the railroad company in that behalf.

The defendants Gould, Woodruff, Starin and Murdock set up, by way of defense, the statutes of limitation of six and ten years. Howland, the statute of six years. Hutchinson and Wallace do not set up either statutes.

The only provision of the Code, that limits the time for bringing actions, in cases like the one before us, is section 97 of the Code. It provides that an action for relief, not hereinbefore provided for, must be commenced within ten years after the cause of action shall have accrued.

This is not an action for relief on the ground of fraud, on which the right of action does not accrue, until the discovery of the fraud by the aggrieved party. § 91, subd. 6.

The fraud, if there was any, that entitled the plaintiff to relief, was either in issuing the bonds without complying with the requirements of the statute, or in their sale to the railroad company in payment of stock.

The town and the tax payers it represents must be charged with knowledge of these acts and omissions to the same extent as the

defendants or others dealing with the bonds, and, if so, these facts must in the absence of proof be presumed to have been known to the plaintiff at the time they occurred, and hence the limitation of six years would apply.

The plaintiff's counsel insists that the cause of action did not accrue until the actions brought in this court by Starin and others to recover on the bonds were decided, nor until the actions brought in the federal courts for the same purpose were decided, by which the plaintiff was apprised that the federal courts would disregard the decisions of the court of appeals as to the invalidity of the bonds, and would hold them to be valid and binding on the town.

I am unable to find any case, since the adoption of the Code, that sanctions the idea that the bringing of an action may be postponed, in cases like the present, until actions are brought upon the void paper.

When the bonds were transferred by the commissioners the right of action accrued, and the ten years' limitation began to run.

If I am right in this, the plaintiff's action was barred as to all the defendants, except Hutchinson and Wallace.

Hutchinson alleges, in his answer, that the town is indebted to him in the sum of $3,000 for money borrowed, which was paid into the treasury of the town and appropriated to its use.

This allegation is not denied by the plaintiff. If, therefore, it is a counter-claim that a defendant is authorized, by section 150 of the Code, to set up in his answer, Hutchinson was entitled to judgment for that sum.

To constitute a counter-claim, it must be a claim existing in favor of a defendant, against a plaintiff, between whom a several judgment might be had in the action, and arising out of the contract or transaction set out in the complaint as the foundation of plaintiff's claim, or connected with the subject of the action, or in an action on contract, any other cause of action arising on contract and existing at the commencement of the action.

Lending the town money has no apparent connection with the unauthorized issue of bonds, nor is it connected in any way with the subject of this action. This action is not founded on contract, and no counter-claim arising on contract is for that reason available.

Again the referee rejected the claim, and no appeal by Hutchinson from the judgment has been taken.

The defendant's counsel rely with a good deal of earnestness on

Vol. I.—18.

the action of the supreme court of the United States, upon bonds issued under the same statute under which the bonds in question in this suit were issued, and he calls upon us to disregard the decisions of the court of appeals, and to give effect to those of the United States.

This we cannot do. We are bound by the decisions of the court of appeals and must enforce the law as that court declares it, unless the federal courts, upon appeal from the judgment of the court of appeals, shall reverse it; we are then bound to give effect to that decision in the case in which it is made.

But before the legal principles enumerated by the federal court shall be applied in other cases, they must be assented to by the court of appeals, especially when the views of the two courts differ as to the law.

Whether the court of appeals will adopt the views of the federal court, as to the validity of the bonds issued under the law in question, it will be for that court to determine. Until it shall so declare, we must follow the case of *Starin* v. *Genoa,* and *Gould* v. *Sterling.*

The judgments in favor of the defendants Hutchinson and Wallace are reversed, and judgment ordered for plaintiffs that the bonds held by them be surrendered and canceled, with costs to the appellants. The judgments in favor of the other defendants are affirmed with costs.

TALCOTT, J., concurs in the conclusion that the bonds are void, but is of the opinion that the present holders of the same are entitled to require that the stock received by the town of Venice must be restored to the holders of the bonds, as a condition of relief, upon the principle that he who seeks equity must do equity, and upon the ground that by the assignment of the bonds by the railroad company, the holders became subrogated to the rights of the railroad company, in this respect, and that one of the incidents of the bonds in equity is that they shall not be canceled except upon the condition that the town shall restore to the holder the consideration received by it.

It is not, under the present rule, necessary that an offer to do this should be made in the bill. That only goes to the question of costs, and the provision for the return of the consideration actually received may be made in the decree, notwithstanding no offer to restore was made in the complaint. *Schermerhorn* v. *Talman,* 14 N. Y. 93.