## THE TOWN OF ONTARIO, PLAINTIFF, v. HEZEKIAH HILL AND OTHERS, DEFENDANTS.

*Statute of limitations — when the right of a town, to sue railroad commissioners for an unlawful issue of its negotiable bonds, accrues — liability of the commissioners for a wrongful issue of bonds.*

This action was brought by the town of Ontario against the defendants, who had been appointed railroad commissioners of that town under chapter 811 of 1868, and chapter 241 of 1869, to recover damages alleged to have been occasioned by reason of their official misconduct. It was claimed that they had wrongfully issued negotiable bonds of the town, knowing when they did so that the assent of the requisite number of tax-payers had not been procured as required by the said acts, and that the issue of the said bonds was unlawful and unauthorized; that some of the said bonds had passed into the hands of *bona fide* holders for value, and that in actions brought by some of these holders upon coupons due thereon judgments had been recovered against the town.

The defendants interposed the statute of limitations as a defense. It appeared that all of the bonds had been issued by the defendants more than six years prior to the time of the commencement of this action, although the judgments in the actions brought by the holders were recovered within that time. Upon the trial the defendants offered, but were not allowed, to prove that the bond-holders who had recovered judgments against the town had all purchased their bonds more than six years prior to the bringing of this action.

*Held*, that the court erred in excluding the evidence.

That the plaintiff's right of action against the defendants accrued immediately upon the passing of the bonds, into the hands of *bona fide* holders who could enforce them against the town, and that the statute of limitations began to run

in their favor from that time without regard to the time when claims against the town might be made by the bondholder.

*It seems* — that as the act made the issue of the bonds conditional upon the procurement of the written consent of persons owning more than one-half of the taxable property assessed, and appearing upon the last assessment-roll of the town and a majority of the tax-payers as appeared by such assessment-roll, which fact, it was by such act provided, should be *proved* by the affidavit of the assessors, or a majority of them — that when an affidavit of the assessors to that effect in due form was presented to the railroad commissioners, their action in determining whether or not the bonds should be issued was judicial in its character, and that for an erroneous or unlawful exercise of this judicial discretion they were not liable to a civil action by the town, even though it were shown that they knew that the requisite consent had not been given when the bonds were issued. (Per BARKER, J.)

MOTION for a new trial, on exceptions ordered to be heard in the first instance at the General Term, after the direction of a verdict in favor of the plaintiff.

In pursuance of the provisions of chapter 811 of the Laws of 1868, and chapter 241 of the Laws of 1869, the defendants were appointed railroad commissioners for the town of Ontario, and in 1871 decided to issue bonds in the name of the town to aid in the construction of the Lake Ontario Shore Railroad. The town now claims that the issue of bonds by the defendants was unauthorized, and that in issuing the same they violated their duty and were guilty of misfeasance in office, and as a portion of such bonds have passed into the hands of persons who have a legal right as against the town to enforce their payment, according to the terms and conditions thereof, the town has suffered damages for which the defendants are liable.

On the trial the court directed a verdict in favor of the plaintiff for the sum of $17,710.95.

The legal questions involved were raised by exceptions taken on the trial, which were ordered to be heard at General Term in the first instance.

*W. F. Cogswell*, for the plaintiff.

*Charles H. Roys*, for the defendants.

BARKER, J.:

The defendants were public officers, charged with the performance of certain special duties, as prescribed in the acts authorizing

them to borrow money on the faith and credit of the plaintiff, and to issue bonds as evidence of such indebtedness. The plaintiff charges that they are guilty of misfeasance in office, in consequence of which it has suffered injury and damage to such an extent as to give it a right of action against them personally, and that the verdict in its favor is just and legal and should be upheld.

The defendants were duly appointed commissioners and subscribed to the capital stock of the Lake Ontario Shore Railroad Company, and after that they issued in payment thereof bonds in the aggregate sum of $85,000, and received a certificate of stock issued by the officers of the company in the usual form, naming the town of Ontario as the owner of the shares of which, at the time of the trial, it remained the owner   The plaintiff now claims that at the time the loan was made and the bonds issued, a majority of the tax-payers of the town had not given their consent to the bonding of the town as required by the statute, and that the defendants were aware of the fact when they issued the bonds, and the misconduct alleged is based on these facts and circumstances.

It is conceded that a large number of tax-payers did give written consents in due form, and that they were thereafter presented to the defendants, as commissioners, with the affidavits of the assessors thereto attached, in due form, as required by the statute, stating that persons owning more than one-half of the taxable property and constituting a majority of the taxpayers, as appears by the proper assessment-roll, had given their consents. All mere formal defects, if any existed in the consents and affidavits, were cured by a confirmatory act, being chapter 127, Laws of 1871.

The statute under which the defendants acted (chap. 241, sec. 2, Laws of 1869) declares that it shall be lawful for the commissioners to borrow money on the faith and credit of their town, in a sum not exceeding twenty per cent of the valuation of the town, to be ascertained by the last assessment-roll for a term not exceeding twenty-five years, and to execute bonds therefor under their hands and seals. The aggregate amount of such bonds was not to exceed the amount set forth in the consent of the tax-payers, and payable at such times and places not exceeding twenty-five years, and in such form as the commissioners may deem expedient; it also provided, no such debt shall be contracted or bonds issued by said commissioners

until consent in writing, *proved* by a subscribing witness, or acknowl-edged as provided for conveyances of real estate, shall first have been obtained of persons owning more than one-half of the taxable property assessed, and appearing upon the last assessment-roll of their town, and a majority of the tax-payers as appears by such assessment-roll, which fact shall be *proved* by the affidavit of the assessors or a majority of them.

The commissioners were not commanded and required to borrow money on the faith and credit of the town, although a majority of the tax-payers owning more than one-half of the taxable property did give written consents as provided by the statute. The subject of bonding the town was confided to their discretion, and if in their judgment it was not for the best interests of the town to create a debt, and aid in the construction of the railroad, they might refuse to do so. They constituted a board for the purpose of determining whether under the circumstances, it was a wise and prudent measure for the town to create a debt for the purposes mentioned. The commissioners were without jurisdiction to act, and could not exercise the discretion confided to them unless it was made to appear by proper proof, that a majority of the tax-payers owning more than one-half of the property assessed had previously given consents in proper form. The plaintiff gave evidence tending to show that a majority of the tax-payers did not give their consent.

To sustain the recovery the plaintiff invokes the application of the rule of law, that when an individual or corporation sustains an injury by the misfeasance or non-feasance of a public officer, who acts or omits to act contrary to his duty, the law gives redress to the injured party by an action adapted to the nature of the case.

The commissioners in the discharge of the duties imposed upon them by the act, acted in a *quasi* judicial capacity. They were to determine on their own judgments acting as a board whether the interests and welfare of the town in its corporate capacity would be promoted by aiding and assisting by the use of its credit in the construction and operation of the proposed railroad.

In determining that question very many matters and things, both present and prospective, would require examination and considera-tion in forming a judgment upon the subject. The commissioners as a board acquired jurisdiction over the subject-matter confided to their

adjudication, and were authorized to receive and act upon the assessors' affidavit as competent and sufficient proof, as to the existence of the conditional fact, to wit, that a sufficient number of consents had been obtained in writing. The affidavit of the assessors was the only evidence upon which they were authorized to act and determine that question. The statute in express terms declares, that the fact to be ascertained was to be proved by the affidavit of the assessors.

It is manifest to my mind that the legislature intended, that so far as the commissioners were concerned, they should receive and act upon the affidavit of the assessors as conclusive proof of the fact that a majority of the consents had been duly obtained. If such proof was not to be received and relied upon by the commissioners as final, so far as they were concerned, it is impossible to discover the object and purpose of requiring an affidavit by the assessors. If the commissioners were permitted to ignore the affidavit as proof of the facts therein recited, and go behind the same and inquire for themselves whether a majority of the taxpayers had given consents, and determine for themselves as to the truth of the affidavits, it would be to exercise the power of review which is not given them by the statute. The assessors, in performing the duties imposed upon them, acted in a *quasi* judicial capacity, and such being the character of their functions strengthens the argument that it was the scheme of the statute that the commissioners in determining whether they had jurisdiction to act on the subject-matter of bonding the town was to be by them determined by the contents of the affidavits.

In *Cagwin* v. *Town of Hancock* (84 N. Y., 541) the court, in speaking of the powers and duties of the assessors, said that the assessors, in determining whether the requisite consents had been given, in making the affidavit exercised *quasi* judicial functions, and that their determination embraced in their affidavit is in the nature of a judgment.

In the *Town of Springport* v. *The Teutonia, Savings Bank* (84 N. Y., 409), in speaking of the affidavits of the assessors, made in pursuance of a similar statute, the court said : The proof of the consents is declared to consist of the affidavit of the assessors, and such is the proof required to justify the railroad commissioners in the

first instance to issue the bonds, and that a different effect should be given to the affidavits as evidence in a court of record where they would be received only as presumptive evidence of the facts therein stated.

In *Howland* v. *Eldredge* (43 N. Y., 460), the court remarked: It is the assessors to whom the power is given to examine the evidence upon the question of consents, and it is upon their conclusion therefrom, and the exercise of their consciences thereon, that the power to bond the town depends, and not that of any other board or tribunal. Had the latter been intended, an appeal from the determination of the assessors would have been given to some designated board or tribunal, and the judgment of the latter substituted in the place of the affidavit of the assessors, in case it differed from their determination.

The statute to which the remarks of the court were applied is in all essential particulars similar to the statute under which the defendants acted. (Laws of 1869, chap. 314, p. 677.)

In a subsequent case (*People ex rel. Yawyer* v. *Allen*, 52 N. Y., 540), the court commenting upon the statute remarked: The affidavit of the assessors to the effect that a requisite number of tax-payers have consented to the bonding of the town, is, by the statute, made proof of the existence of such fact, upon which the issue of the bonds of the town by the commissioners is authorized; that such affidavit made by the majority of the assessors is in the nature of a judgment or decision determining the existence of such fact, and that their proceedings are reviewable by the Supreme Court the same as those of any other subordinate board or tribunal.

It has never been held, so far as I can discover in any of the reported cases that the commissioners did not acquire jurisdiction over the subject matter, as to the propriety of bonding the town, by the affidavits of the assessors, if they were in substance in compliance with the statute authorizing the making of the same. On the contrary, it is held in the decisions cited, as well as in other others not referred to, that such affidavits are the evidence and the only evidence upon which the commissioners can act in determining the question whether a majority of the tax-payers had given their consent as required by the statute.

It is a general rule of law adopted as the guide for officers exer-

cising special and limited powers, that where a statute prescribes the particular evidence that shall be furnished to an officer or tribunal in order to authorize the issue of process or the performance of any other duty, jurisdiction is acquired when such evidence is furnished, and no other evidence can be required. This proposition is in harmony with legal principles and the authorities.

In *Roderigas* v. *The East River Savings Institution* (63 N. Y., 464) the rule is stated as follows : Where the statute prescribes that some fact must exist before jurisdiction can attach in any court, such fact must exist before there can be jurisdiction, and the court cannot acquire jurisdiction by erroneously deciding that the fact exists, and that it has jurisdiction. But where general jurisdiction is given to a court over any subject, and such jurisdiction depends in the particular case, upon facts which must be brought before the court for its determination upon evidence, and where it is required to act upon such evidence, its decision upon the question of its jurisdiction is conclusive until reversed, revoked or vacated, so far as to protect its officers and all other innocent persons who act upon the faith of it. (See, also, *Miller* v. *Brinkerhoff*, 4 Denio, 119 ; *Staples* v. *Fairchild*, 3 N. Y., 41.)

In the latter case it was remarked, where certain facts are to be proved before the court or officer of special or limited jurisdiction, as a ground for issuing process, and there is a total defect of evidence the process will be void. But where the proof has a legal tendency to make out a proper case in all its parts for the jurisdiction of the court or officer, although such proof may be slight and inconclusive, the process will be valid until set aside on a direct proceeding for that purpose. In one case the court acts without authority, and in the other it only errs in judgment upon a question properly before it for adjudication. In one case there is defective jurisdiction, and in the other there is only error in judgment.

In *Porter* v. *Purdy* (29 N. Y., 106), the defendants were trustees of a municipal corporation, and they were sued personally for damages, resulting from their action as a board of trustees. They were authorized to appoint five persons, freeholders, to assess the expense of building a sewer. The plaintiff's property was sold under and in pursuance of the assessors' valuation and levy, and he brought an action against the defendants to recover the damages

which he sustained by reason of the sale of his property, claiming that the trustees violated their duty and acted without jurisdiction in the appointment of one of the assessors, for the reason that he was not a freeholder. It appeared upon the trial that the assessor named was not a freeholder when he was appointed, but at that time he was in the possession of a piece of land within the corporate limits, and the only interest he had therein was by an executory contract for the purchase of the same. It was held, as the assessor was in the possession of a piece of land and lived thereon, it was some evidence that he was a freeholder, and such evidence gave the board of trustees jurisdiction to determine whether the assessor appointed possessed the requisite qualifications or not, and that their determination of that question, so long as the same remained unreversed, protected them, and the court remarked: " When, in special proceedings in courts or before officers of limited jurisdiction, they are required to ascertain a particular fact, or to appoint persons to act in such proceedings having particular qualifications or occupying some peculiar relations to the parties or subject-matter; such acts when done are in the nature of adjudications, which, if erroneous, must be corrected by a direct proceeding for that purpose, and if not so corrected, the subsequent proceedings which rest upon them are not affected, however erroneous such adjudication may be." There is a necessity for this doctrine, as without it it would be almost impossible ever to carry into effect special proceedings affecting property or persons.

So if the defendants in this case were authorized to receive and read the affidavits, as some evidence on the question of their jurisdiction, then they are not liable in this action for their subsequent determination to borrow money on the faith and credit of the town and issue bonds for the re-payment of the same.

If the affidavits were not a final and conclusive determination of the question so far as the commissioners were concerned, and they had a right to go behind the same and investigate for themselves and reach a conclusion from all the evidence accessible and pertinent to the question, then the same result must be reached, for the reason, that in the discharge of that duty they were acting in a *quasi* judicial capacity. The affidavits of the assessors were before them and properly so, and they were authorized to receive and act upon them,

as some evidence on the question they were required to determine. It cannot be said, therefore, that they acted without evidence in support of the fact which it was necessary for them to ascertain.

A public officer who may violate a duty which is purely judicial or *quasi* judicial in its character, is not subject to a civil action at the suit of third persons who have been injured by his action so long as he keeps within the limits of his jurisdiction. Although the officer may not in strictness be a judge, still, if his powers are discretionary, to be exercised or withheld according to his own views of what is necessary and proper, they are in their nature judicial, and he is likewise exempt from civil prosecutions. If guilty of misconduct he may be impeached or indicted, but the law does not tolerate an individual right of action. (*Lange* v. *Benedict*, 73 N. Y., 12; *Wilson* v. *Mayor of N. Y.*, 1 Denio, 595; Broome's Legal Maxims, 40, 48.)

But it is claimed by the plaintiff that the case made by it is taken out of the general rule for the reason as it alleges, and as it may be admitted the evidence tended to show, the defendants knew when they issued the bonds that a majority of the tax-payers had not given their consents. Although they may have received information satisfactory to their own minds that the statute had not been complied with, nevertheless they had jurisdiction over the subject-matter by force of the assessors' affidavit, and did not lose it on being informed that it was a false affidavit. If they acted, knowing proper consents had not been given, it would tend to prove that they acted corruptly, and they are liable to indictment and punishment for malfeasance; yet it does not change the rule of law that, as judicial officers, they are not exposed to a civil action, although they acted maliciously and corruptly.

If the views which we have expressed and the conclusions we have reached are correct, then upon the merits the plaintiff failed to make out a cause of action, although it was established beyond all controversy that a majority of the tax-payers did not consent, and that the defendants were so informed when they issued the bonds which the plaintiff has been held liable to pay.

We have, however, examined the question presented on the plea of the Statute of Limitations, and are of the opinion that upon the facts as now presented, that defense constitutes a bar to a recovery.

The last act of the defendants connected with the issuing and delivery of the bonds into the hands of third persons, as purchasers, was more than six years prior to the commencement of this action. Upon the coupons attached to some of the bonds, recoveries have been had against·the plaintiff, within six years before the commencement of this suit.

As we understand the record, the bonds were in fact delivered by the commissioners to parties, other than those who have maintained actions and received judgments against the plaintiff, and that it does not appear from the evidence, when the parties so prosecuting the actions acquired their title to the bonds. The defendants offered to prove that such parties did in fact acquire their title, more than six years prior to the commencement of such actions against the plaintiff. This offer was refused and the defendants excepted. In disposing of the question presented by this defense, in view of the ruling, we must assume that those parties became owners more than six years prior to the commencement of this action.

The learned counsel for the plaintiff argues that the statute did not commence to run until the judgments against the town were recovered, because until such recoveries were had the plaintiff had no complete cause of action against the defendants.

In a legal sense the plaintiff had sustained damages by the action of the defendants when the bonds passed into the hands of persons who could enforce their payment against the town. The plaintiff's alleged right of action springs out of the defendants' breach of duty as public officers, and is in the nature of an action on the case for consequential damages. While the right to sue was not perfect until some legal damages had accrued to the·plaintiff, when injuries did happen to it, for which damages could be recovered by the principles of the common law, then the statute commenced to run. (*Bank of Utica* v. *Childs*, 6 Cow., 238 ; *Argall* v. *Bryant*, 1 Sandf., 98 ; *Town of Venice* v. *Breed*, 65 Barb., 597 ; *Northrop* v. *Hill*, 57 N. Y., 352.)

The bonds issued by the defendants in the name of and in behalf of the town were negotiable instruments made payable to bearer and passed by delivery, the principal debt secured thereby not having matured the maker's liability thereon was complete when

they passed into the hands of a *bona fide* holder who could legally enforce their collection against the town. As soon as that occurred the defendants became liable to the plaintiff, if ever liable. If the defendant's action in issuing the bonds was such as under the circumstances would give the plaintiff a right of action against them personally, it was then complete and the plaintiff would have been entitled to recover as damages the full face of -the bonds with the interest that had accrued thereon, consequently the statute of limitations commenced to run in the defendants' favor from that time.

In principle the case falls within the rule laid down in *Decker* v. *Mathews* (12 N. Y., 313). In that case Decker made his promissory note to be used for a particular purpose, and before it was negotiated Mathews wrongfully converted and disposed of the note to a *bona fide* holder. The plaintiff without making proof that he had paid the note sued Mathews for a conversion and recovered as damages the face of the note and interest thereon, and it was held that the plaintiff's damages were the face of the note. which he became liable to pay by the wrongful act of the defendant; that the law would presume, as he was liable to pay it, that he had paid it, or would pay it, voluntarily, or that he would be compelled to pay it in a suit thereon by the holder; that the cause of action accrued in favor of the plaintiff immediately on his becoming liable to pay the note by its transfer to a *bona fide* holder. (See, also, *Murray* v. *Burling*, 10 Johns., 172; *Evans* v. *Kymer*, 1 Barn. & Adol., 528; *Thayer* v. *Manley*, 73 N. Y., 305.)

Within the rule laid down in the case last cited, the plaintiff could have maintained a cause of action against the defendants and recovered as damages the full face of the bonds on the transfer of them by the defendants in payment of the subscription for the stock, although the parties who received them for that purpose knew the fact that the town had a perfect defense to the bonds in their hands, for the reason that those parties had it in their power to transfer the bonds to a *bona fide* holder who could enforce their payment against the town.

In the case referred to (*Thayer* v. *Manley*), Thayer by means of false and fraudulent representations made by the defendant was induced to execute and deliver to him three promissory notes of five hundred dollars each, payable to the defendant or bearer two,

three and four years from date respectively. Before either of the notes became due the plaintiff demanded them of the defendant, who refused to deliver them up. The plaintiff thereupon commenced an action in the nature of an action of trover, for the conversion of all of the notes. At the time of the trial, all of the notes were then held by Manley, never having been negotiated, and one of them was past due. On the trial the jury were instructed by the court that if the plaintiff had established the alleged fraud, then he was entitled to recover an amount equal to the face of the three notes, with interest, and a recovery was had accordingly. It was held by the Court of Appeals that there was " no error in the charge," as it stated the correct rule of damages applicable to the case; that the plaintiff recovered a just indemnity for the wrong which had been done, and no more ; that the true test by which it is to be determined is the amount of injury which the plaintiff has sustained, the court remarking : " While he was the holder (of the notes) perhaps a perfect defense to their validity existed. * * * But the defendant had it in his power to dispose of them ; and when the notes were demanded, he refused to deliver up the same ; and then, or even after the action was brought, the defendant could have transferred them to a *bona fide* holder before they became due, and they would have been valid in his hands. The plaintiff thus being liable to the risk of being obliged to pay the notes when the action was brought, he was entitled to recover the actual damage which might accrue to him by reason of any transfer of the same, and that right is not impaired by the fact that one or more of the notes might become due at the time of a future trial. The cause of action existed when the suit was brought, and cannot thus be impaired or frittered away. It being a legal presumption that the plaintiff would either pay willingly or be compelled to pay the notes, he was entitled to recover the amount of the notes, which alone would indemnify him against the same. Mere nominal damages would not cover the full amount of loss which might be incurred."

In a sense, as it has been frequently held by the courts, the commissioners were agents of the town. The case is similar then, in its legal aspect, to a case where an agent disobeying the instructions of his principal and disregarding the limits placed upon his author-

ity, delivers the note of his principal into the hands of a third person under circumstances which entitle the latter to enforce it against the principal. In such a case the principal can maintain an action against his agent for a breach of duty, and recover, as consequential damages, the face of the note before he pays the same. If any of the coupons attached to the several bonds had matured before the bonds were transferred to a *bona fide* holder, that circumstance did not render the bonds and the subsequent maturing coupons dishonored paper, so as to subject them in the hands of a purchaser for value to defenses good as against the original holder. (*Cromwell* v. *County of Sac.*, 96 U. S., 51; *National Bank of N. A.* v. *Kirby*, 108 Mass., 497.)

We have examined the several cases cited by the learned counsel for the plaintiff, and we fail to discover that they are the least in conflict with the authorities cited, or with the views we entertain concerning the case at bar.

In *Roberts* v. *Read* (16 East, 215), the defendants committed an act of trespass upon the lands of the plaintiff by digging and undermining a wall; afterwards the wall fell in consequence of the act of the defendants in digging away the earth which supported it. In an action for consequential damages, growing out of the breaking down of the wall, the court held that the statute commenced to run at the time the wall fell, as the action was for damages resulting therefrom, and not for the original trespass. That damages subsequent to the trespass developed a new cause of action distinct from the original trespass.

Neither is the case of the *Bank of Hartford County* v. *Waterman* (26 Conn., 324), hostile to the principle laid down in the cases we have mentioned. There an attachment had been delivered by the bank to the defendant, as sheriff, to execute. He attached property sufficient to pay the bank's debt. In his return the sheriff made a mistake in describing the property, which by the laws of that state made the levy irregular and valueless as a security for the payment of the plaintiff's debt. At a subsequent time the bank recovered a judgment against its debtor, who in the meantime had become insolvent. On issuing execution on the judgment, the error of the sheriff was discovered. In an action against him by the bank to recover the damages which it had sustained in consequence of the

error, it was held, that the cause of action in favor of the bank against the sheriff, accrued at the time the plaintiff recovered judgment and discovered the error and not before. A majority of the court holding that the plaintiff had not been injured in a legal sense until after judgment was recovered in the suit in which the attachment issued. One member of the court dissented. The disagreement arose on the application of admitted principles to the exceptional facts and circumstances of the case.

The case at bar is distinguishable from that case and others where the cause of action arises out of a trespass to property, real or personal, because of the rule of law applicable to the rights of a *bona fide* holder of commercial paper when his title is acquired before maturity.

Judgment reversed, new trial granted, with costs to abide event.

SMITH, P. J., and HARDIN, J., concurred in, result, placing their concurrence on the last ground stated in the opinion.

New trial ordered, costs to abide event.