LILLIAN KASITCH, Respondent, *v.* CITY OF ALBANY, Appellant.
HELEN P. CZYZEWSKI, Respondent, *v.* CITY OF ALBANY, Appellant.

Third Department, March 6, 1940.

*Joseph J. Casey* [*Corporation Counsel* [*George Myers, Assistant Corporation Counsel,* of counsel], for the appellant.

*Carter & Conboy,* for the respondents.

HEFFERNAN, J. Defendant has appealed from an order of the Albany Special Term of the Supreme Court, made on plaintiffs' application, directing two of its officers to submit to an examination before trial and requiring them, in connection with such examination, to produce certain books and records pursuant to sections 288 and 289 of the Civil Practice Act.

The actions are brought to recover damages for personal injuries alleged to have been sustained by plaintiffs because of defendant's negligence.

The complaints charge, in substance, that defendant constructed, installed and maintained a toboggan slide on property owned by it known as the Municipal Golf Course and invited the public to use the same; that while plaintiffs were lawfully using such toboggan slide on January 15, 1938, with the knowledge and consent of defendant and its officers and employees, they were severely injured because of defendant's negligence in the construction, maintenance and operation of the same. These allegations are denied in defendant's answers.

In the application for the order under review plaintiffs submitted an affidavit to the effect that on the trial of the actions they would

be obliged to prove that defendant was the owner of the land upon which the toboggan slide was erected; that it constructed and maintained the same and invited the public generally to use it and that all the facts relating to the ownership of the land and the character of the construction of the slide and the manner in which it was maintained were all unknown to plaintiffs but were peculiarly within the knowledge of defendant and its officers.

It is apparent from the papers upon which the order appealed from is based that unless plaintiffs are permitted to examine defendant on the subjects specified grave injustice and grievous wrong will result. This court has repeatedly held that an application to examine an adverse party should not be denied where it is necessary or useful in establishing a cause of action on behalf of a plaintiff or an affirmative defense upon the part of a defendant and that such an examination should not be hampered by technical requirements. (*Brand* v. *Butts*, 242 App. Div. 149; *Breault* v. *Embossing Company, Inc.*, 253 id. 175.)

Defendant's counsel strenuously urges that the statutory provisions relating to an examination before trial have no application because his client is a municipal corporation and cites in support of his contention *Davidson* v. *City of New York* (221 N. Y. 487) and *Bush Terminal Co.* v. *City of New York* (259 id. 509). The same contention was made and rejected by this court in *Weinberg* v. *City of Troy* (256 App. Div. 1028; leave to appeal to the Court of Appeals denied, 257 id. 1062; 281 N. Y. 889). That case is complete justification for the order in this case. The doctrine of *stare decisis* requires adherence to our former decision. Such a determination is necessary for the regularity and uniformity of practice in order that litigants may know with certainty the rules by which they are to be governed in the conduct of their cases.

The cases cited by appellant are not in conflict with our views on the present appeal. In the *Davidson* case the Court of Appeals affirmed the decision of the Appellate Division reported in 175 App. Div. 969. The Appellate Division in that case in affirming the Special Term followed its decision in *Uvalde Asphalt Paving Co.* v. *City of New York* (149 App. Div. 494). In the *Uvalde* case the application for examination was denied largely on the ground of public policy. At the time of the rendition of the decision in that case section 872 of the Code of Civil Procedure only permitted an examination of a corporation through its officers and directors. In the *Davidson* case the application for the examination was made in order to obtain information to frame a complaint and to join such other parties as might be necessary as defendants. At that time section 872 of the Code had been amended so as to include managing

agents of a corporation among those who might be examined. In neither the *Uvalde* nor the *Davidson* case was the examination sought to examine either an officer, director or managing agent. In each instance the plaintiff sought to examine employees. Then too in the *Davidson* case it was conceded that the persons sought to be examined had no personal knowledge of any of the facts. In both the *Uvalde* and *Davidson* cases the examination was also sought for the purpose of examining the books, accounts and records of the city. The courts pointed out in these cases that under the provisions of the charter of the city of New York all books, accounts and papers of any department, except the police and law departments, were open to inspection by any taxpayer.

The *Uvalde* case was decided in 1912 and the *Davidson* case in 1917. Both arose under the Code of Civil Procedure. Under that Code parties ordinarily were not subject to examination before trial. The practice relative to the taking of testimony by deposition under the Code of Civil Procedure and the Civil Practice Act is entirely dissimilar. In this respect the latter act has wrought a radical change. (*Brand* v. *Butts, supra.*)

The *Bush* case, decided in 1932, after the Civil Practice Act had become effective, rested entirely on the authority of the *Davidson* case. It is likewise to be noted that the examination sought in the *Bush* case was that of certain employees of the city. There the plaintiff had fully inspected the books and records of the defendant and plaintiff's attorney after such examination sent a letter to the corporation counsel to the effect that the information obtained by such examination established liability on the part of the city. Plaintiff's application for a further examination was opposed on the sole ground that it did not lack information which it sought. Since the adjudications in the *Uvalde* and *Davidson* cases were made the Legislature by enactment of the Civil Practice Act has made sweeping changes in the rights of litigants to examine adverse parties before trial. Where formerly only officers, directors or managing agents of a corporation could be examined the right is now extended to take the depositions " of one or more of its officers, directors, managing agents or employees." (Civ. Prac. Act, § 289.) Manifestly these statutory enactments have destroyed the foundation for the decision in the *Uvalde* and *Davidson* cases. A municipal corporation is included within the term corporation as used in the Civil Practice Act. (General Corporation Law, § 2.) Section 289 of the Civil Practice Act by its terms does not place any limitation on the particular type of corporation that is to be examined before trial. Obviously it includes all corporations. The language of section 288 of the Civil Practice Act is also all inclusive. It states:

" Any party to an action in a court of record may cause to be taken by deposition, before trial, his own testimony or that of any other party which is material and necessary in the prosecution or defense of the action."

The facts which impelled the decisions in the *Uvalde, Davidson* and *Bush* cases and the conditions under which they were rendered are materially different from those in the case under consideration and hence are no longer controlling. Those cases should be limited to the facts on which they were grounded. The reasons on which those cases were based no longer exist. Since the rendition of these decisions the activities of municipal corporations have been revolutionized. Today they are free to engage in enterprises which were denied them yesterday.

The rule which formerly prohibited the examination of municipal corporations does not square with justice today. The law is progressive and should adapt itself to the changed and rapidly changing conditions of society. Its dominant purpose is to secure justice and not to obstruct it. To accomplish that result and to keep abreast with such changes courts often find it necessary to abandon old doctrines which were quite unexceptionable when enunciated. Precedents are valuable only when adherence to them will serve the course of justice; to be renounced when their tendency is to perpetuate error. It is not our intention or purpose to disregard any rule established by the Court of Appeals. Intimations to the contrary in the dissenting opinion indicate a complete misapprehension of the reasons on which our decision is based.

The order appealed from should be affirmed, with ten dollars costs and disbursements, and the matter remitted to the Special Term to fix the time and place of hearing.

CRAPSER, J., concurs; HILL, P. J., and BLISS, J., concur solely upon the ground that the question is not open in this court on account of the decision in *Weinberg* v. *City of Troy* (256 App. Div. 1028); SCHENCK, J., dissents, with an opinion.

SCHENCK, J. (dissenting). Were this a case of first impression, the order under review might very well be affirmed, especially inasmuch as the answer has cast upon the plaintiff the burden of proving facts which can most easily be established by those officials of the city whose examination is sought. But the question is no longer an open one for this court, in view of the decisions in *Davidson* v. *City of New York* (221 N. Y. 487) and *Bush Terminal Co.* v. *City of New York* (259 id. 509). " *Stare decisis* guides the courts " (*Matter of Laudy*, 161 N. Y. 429, 435), as it did when *Weinberg* v. *City of Troy* (256 App. Div. 1028) was before the learned Special

Term, reversal of whose decision therein by this court, however, constrained the same learned justice to grant the order in this case; yet it is equally incumbent upon this court to follow the rule which the Court of Appeals has reiterated. Upon the authority of those two decisions, recognized as having established for the courts of New York a practice different from that which now obtains under the new Federal Rules of Civil Procedure (*Joy Mfg. Co.* v. *City of New York*, 30 F. Supp. 403), examination of a public corporation before trial has recently been denied by Mr. Justice HALLINAN (*Rucker* v. *Bd. of Education of City of New York*, 172 Misc. 731) and by Mr. Justice STEINBRINK (*Lovero* v. *Home Owners' Loan Corp.*, Id. 754) upon the authority of Mr. Justice McGEEHAN's decision in *Smith* v. *Citizens Savings Bank* (166 id. 843), where the earlier controlling cases are cited, as they are also in *Mack* v. *School Board of Briarcliff Manor* (171 id. 165).

Far from upholding the doctrine of *stare decisis* invoked in the majority opinion, affirmance of the Special Term's order herein must inevitably flout that wholesome rule. " Certainty is of the very essence of the law. Shifting and changing rules or principles do not constitute law. The avoidance or prevention of litigation through the establishment by the courts of fixed and certain rules is a useful and beneficent effect of the litigations had." (*Matter of Grifenhagen* v. *Ordway*, 218 N. Y. 451, 458.) " Decisions of a court of last resort are to be regarded as law and should be followed by inferior courts, whatever the view of the latter may be as to their correctness, until they have been reversed or overruled." (15 C. J. 920.) " The decision of the tribunal of last resort of the State must be considered the law of the land, until it shall have been reversed." (*Rochester & Genesee Valley R. R.* v. *Clarke National Bank*, 60 Barb. 234, 250.) " It is not for the inferior court to disregard the decisions of the court of last resort; but, on the other hand, it is their duty to give them full effect, whatever their views may be as to the correctness or wisdom of such decisions." (*Costello* v. *Syracuse, etc., R. R. Co.*, 65 Barb. 92, 100.)

To the suggestion in the prevailing opinion that the two decisions of the Court of Appeals have become obsolete with the passage of time, there are two answers: (1) Since the decision in the *Bush Terminal* case was announced, the Legislature, by chapter 512 of the Laws of 1937, has amended section 289 of the Civil Practice Act, but without providing specifically for the examination of a municipal corporation, and this court has held that a decision which has stood the test of years, without inviting legislative alteration, is entitled to the respect of this court (*Bradley* v. *Village of Union*, 164 App. Div. 735); (2) considered opinions of the Court of Appeals do not lose their authority by age alone, but are to be followed

(*Central Trust Co.* v. *Falck*, 177 App. Div. 501, 508), unless and until that court itself limits or overrules them. (*Town of Venice* v. *Breed*, 65 Barb. 597, 606, 607; *Titus* v. *Booker*, 216 App. Div. 608, 612; affd., 244 N. Y. 421.) In 1900, before " a reconstruction in the membership of the court " (*Graves* v. *New York ex rel. O'Keefe*, 306 U. S. 466, 487), Presiding Justice PARKER, dealing with a contention that an earlier decision by the Court of Appeals was no longer authority because of a subsequent enactment by the Legislature, observed that the argument should be addressed not to this court but to the Court of Appeals. (*Scott* v. *King*, 51 App. Div. 619.)

In presenting the Judiciary Article to the Constitutional Convention of 1894, Elihu Root said: " The public interests demand that the law should be settled; that it should be the same for the whole State; that it should be a consistent and harmonious system; that it should be declared clearly and authoritatively by some supreme power, in order not merely that litigants may have their right, but that the whole people may know what is the law, by which their contracts and conduct shall be regulated, and by the observance of which they may, if possible, keep out of litigation. It is this necessity alone which justifies the existence of a Court of Appeals superior to the appellate tribunals which first review the decision of trial courts." (2 Revised Record, p. 464.) The report of the committee on the judiciary to the Constitutional Convention of 1915 regarded " the judicial function of the Court of Appeals as that of settling the law for the whole State and maintaining one consistent and harmonious system of justice " (2 Revised Record, p. 1952), and in committee of the whole, Mr. Wickersham said: " We consider the Court of Appeals as a court of law created for the purpose primarily of settling the law of the State." (3 Revised Record, p. 2421.) What becomes of the ideal function of the Court of Appeals as the final arbiter of the law of this State if its decisions are to be followed at Special Terms in the First and Second Departments but nullified in the Third Department?

Since an affirmance of the order below will result in an intermediate order, no appeal therefrom may be taken to the Court of Appeals, save with the permission of this court on a certified question. (Civ. Prac. Act, § 588, subd. 4; Cohen on the Powers of the Court of Appeals, § 78.) To be sure, on an eventual appeal to the Court of Appeals from an adverse final judgment the propriety of this court's affirmance of the order of the Special Term may be brought up for review (Civ. Prac. Act, § 580), but that can come to pass only after a trial wherein the depositions of defendant's officials will have been read in evidence, with the possibility that the Court of Appeals, adhering to its earlier decisions, may hold that they

should not have been taken. In view, therefore, of the dissent of two members of this court in *Weinberg* v. *City of Troy* (*supra*), and the conflict between the decisions in the First and Second Departments above noted and the decisions in this Department, affirmance of the order below should be accompanied by leave to appeal to the Court of Appeals upon substantially the same question certified in *Davidson* v. *City of New York* (*supra*), viz.: " Do the provisions of sections 288 and 289 of the Civil Practice Act apply to a municipal corporation as a party to an action?"; else, there must be a retreat from the proud maxim that ours is a government of laws and not of men.

Order affirmed, with ten dollars costs and disbursements, and the matter remitted to the Albany Special Term to fix the time and place of hearing.